GILBERT KNOWLTON vs. Inhabts. of PLANTATION No. 4.

The general agent of a town or plantation has sufficient authority to employ counsel to defend an action brought against such town or plantation.

An objection to the right of counsel to appear in defence of an action cannot be taken after the term at which such appearance is first made.

If the Assessors of a plantation from time to time visit a bridge while it is being built by an individual on a highway within the plantation, such acts, unaccompanied with any explanation on their part, will be strong evidence from which a promise by the plantation to pay therefor may be implied; but if the assessors had previously notified such person, that if he should proceed to build the bridge, that he must look to another source for his reimbursement, and after the notice he build the bridge, relying at the time upon the other source for payment, no promise can be implied in his favor from those acts.

If a person build a bridge across a stream on the public road within a plantation, after having been notified by the assessors and other inhabitants not to build the bridge at the expense of such plantation; he cannot recover the value of the bridge against the plantation on an implied promise, by proving that the inhabitants made use of such bridge in travelling upon the road.

THIS was an action of *assumpsit,* brought to recover the value of certain materials, and labor furnished and done by the plaintiff, as he alleged, in building a bridge for the defendants, over *Great Works stream,* in their plantation. The general issue was pleaded and joined. At the *second term* after the pendency of the action in this Court, the counsel for the plaintiff, called upon the counsel for the defendants, for their authority to appear in their behalf. They were employed by an inhabitant of the plantation, who produced evidence of his appointment, as their agent, in general terms, without any particular reference to this action. After a former bridge had been carried away, and prior to the building of the bridge by the plaintiff, the sessions had established a ferry at that point. It was agreed that the defendants had been indicted for a defective highway, and that a fine was imposed upon them of $600, by the Court of Common Pleas for this county, at their *June Term,* 1829, and that the plaintiff had been appointed the agent to cause it to be expended. It appeared that no warrant of distress had ever issued, and that the Court of Common Pleas, at their *June Term,* 1832, ordered the same to be stayed. Application was made in behalf of the plaintiff to the Supreme Judicial Court at their term in

this county, in *June*, 1833, for a mandamus to the Court of Common Pleas, to direct that a warrant of distress be issued, which this Court at their *June Term*, 1834, refused.   After the fine was imposed the plaintiff called upon the inhabitants of the plantation, and upon their assessors, to work out the fine ; and they proceeded to work under his direction ; and the jury found, upon being requested to answer to this point, that prior to the building of the bridge by the plaintiff, the fine had been worked out in full.   The plaintiff introduced a letter from the assessors of the plantation of which the following is a copy.

*Plantation No. 4, March 7th, 1832.*

*Mr. Knowlton,*

        Sir,

                Having advised with some of the principal inhabitants of the plantation, we are of opinion, that the fine now standing against the plantation had better be appropriated to the building of a bridge across *Great Works stream ;* provided the same can be built in a substantial and workmanlike manner for a sum not exceeding five hundred and twenty-five dollars.

*Thos. S. Cram,*
*Bradley Blackman,* } Assessors of Plantation No. 4.
*Geo. Vincent,*

*Thomas S. Cram* testified that he and the other assessors visited the bridge occasionally while it was building ; that he considered it his duty so to do, but that he took no charge or direction of it, any more than any other inhabitant.   It appeared that in *April* or *May*, 1832, before the plaintiff built the bridge, but after the timber had been obtained by one *Delvin*, who afterwards sold it to another person who sold it to the plaintiff, in the summer, he met informally a majority of the inhabitants of the plantation, who told him not to proceed to bring a charge upon them.   And *John Brown* testified that he heard *Spofford*, one of the assessors, forbid the plaintiff from proceeding the day he commenced.   The bridge was commenced building in *July* or *August*, and completed by the plaintiff in the summer of 1832, since which time it has been used by the inhabitants of the plantation and others, having occasion to pass over it.   *Joseph W. Williams* testified, that as surveyor of highways he did in the season of 1835, since the commencement

of this action, cause two cart loads of earth to be placed upon the abutments at each end of the bridge, to fill up some small excavations, but that he had no special authority to work upon the bridge. A verdict was returned for the plaintiff; it being agreed that if in the opinion of the Court, the action is not supported by the foregoing evidence, the verdict is to be set aside, and the plaintiff to become nonsuit.

*Kent*, for defendants.

Every thing stated in relation to the fine for badness of road, and the appointment of the plaintiff as agent for laying it out, may be laid out of the case, because, prior to the commencement of building the bridge, the fine had been fully worked out, and the Common Pleas, before that time, had ordered the writ of distress to be stayed, and this Court had refused a mandamus. If the fine had not been worked out, he must seek his remedy under the statute process, and cannot maintain *assumpsit* against the town.

The assessors of a plantation have no authority to bind a town in relation to making roads or bridges without being specially authorised by the inhabitants. If highways are out of repair, the surveyors are to put them in order. *Loker* v. *Brookline*, 13 *Pick.* 346. But in this letter there is no contract, or proposition for a contract. It is merely advice to the agent to proceed under his agency. Nor is any act of ratification proved on the part of the assessors.

The plaintiff did not suppose, that he was acting under a contract with the town. His persevering application for the warrant of distress shews the contrary.

As no express promise is proved, the question is, whether a person who voluntarily does work in a town or on the highways, without contract or request, can recover in *assumpsit*? *Assumpsit* must be grounded either on express or implied consent. *Whiting* v. *Sullivan*, 7 *Mass. R.* 107; *Jewett* v. *Somerset*, 1 *Greenl.* 125; *Stokes* v. *Lewis*, 1 *T. R.* 20; *Tappin* v. *Broster*, 1 *Car. & P.* 112; *Andrews*, v. *Callender*, 13 *Pick.* 491. A contract is the assent of two minds. 2 *Black. Com.* 443; 2 *Kent's Com.* 477, *note.* But in this case, the plaintiff had express notice not to build the bridge for defendants. Even if the work was necessary and beneficial, that is not enough. No individual has a right to

assume the discretion of a town or plantation. *Bartholomew* v. *Jackson*, 20 *Johns.* 28; *Comstock* v. *Smith*, 7 *Johns.* 88; *Jones* v. *Lancaster*, 4 *Pick.* 150; *Loker* v. *Brookline*, 13 *Pick.* 343; *Haskell* v. *Knox*, 3 *Greenl.* 445; *Bath* v. *Freeport*, 5 *Mass. R.* 326. But it is not certain, that the defendants were bound to build the bridge, as a ferry had been established by the Court of Sessions; and if they were, they had a right to do it with labor and materials furnished by themselves.

Nor has there been any ratification by the defendants. If a man will work on the roads, he cannot thereby prevent the people from passing over it, and the town will not be compelled on that account to pay for the work. And so this Court said in *Hayden* v. *Madison*, 7 *Greenl.* 79.

The putting on the two loads of earth cannot be a ratification by the defendants. 1. The surveyor had no authority from the defendants, and did it at his own instance. 2. It was done after the suit was brought. 3. The town was obliged to keep the road in repair to prevent a fine.

*T. P. Chandler*, for the plaintiff, contended, that the verdict ought to stand:

1. The defendants have received the benefit of the plaintiff's services, which were rendered at the request of the principal officers of the plantation.

2. The inhabitants of the plantation all knew of the building of the bridge, and made no formal objection to it.

3. The defendants have accepted the bridge by using and repairing it; and the plaintiff has now no right to remove it without their consent, which has not been given.

4. The plaintiff, as agent never accepted the road, built by the defendants; and if he was not justified in building the bridge, on account of the fine, yet he acted honestly under a mistake of the law; and under such circumstances the party who has received the benefit ought to bear the burden.

5. The plaintiff was a public officer honestly discharging what he believed to be his duty, the defendants looked on and approved his acts; the parties were equally in error, and neither should derive a benefit at the expense of the other.

6. If the plaintiff is not entitled to the amount expended, he ought to recover such sum, as the bridge is actually worth to the defendants ; and he cited *Hayward* v. *Leonard,* 7 *Pick.* 181 ; *Hayden* v. *Madison,* 7 *Greenl.* 76 ; *Abbott* v. *Hermon, ibid.* 118.

The opinion of the Court, after a continuance *nisi,* was drawn up by

Weston C. J. — The counsel for the defendants, having been employed by their general agent, was sufficiently authorised to appear in their behalf, if the objection to his authority had been taken at the first term, as it should have been.

There has been no evidence of an express contract, upon which the action could have been founded. The letter of *March,* 1832, from the assessors of the plantation to the plaintiff, contains only the intimation of an opinion, as to the course, which it was most expedient to pursue, in the appropriation of the fine. If that had been otherwise appropriated and expended, as the jury have found, there was nothing in the letter, which has the slightest bearing to authorise the plaintiff to build the bridge, or to pledge to him therefor the credit of the plantation.

If there was no express contract, is one to be implied from the facts in the case ? It appears that the assessors visited the bridge from time to time, while it was building. If they had been authorised to cause a bridge to be built, these acts of inspection, unaccompanied with any explanation on their part, would have been strong evidence to charge the plantation. As the assessors were their prudential officers, an implication to the same effect might have been justified, if no such authority had been specially confided to them. But they had previously explained themselves. Their letter to the plaintiff had in effect advised him, that if he proceeded, he must look to the fine for his reimbursement. The plaintiff seems unaccountably to have cherished a belief, that the fine might be enforced for his benefit, even after a warrant of distress therefor had been refused by the Common Pleas. That he relied upon that source is manifest from the application, which he subsequently made to this Court, for a mandamus to the Common Pleas, to cause such a warrant to issue. He had, before he commenced the work, informally met a majority of the inhabitants of the plantation, who

had insisted that he should not proceed, to bring a charge upon them ; and he was forbidden to do so by one of the assessors. His pertinacity in going on, not only without authority, but against their protestations, seems to exclude the implication of an *assumpsit* on their part. Nor is there reason to believe that he expected to charge them on a contract, express or implied. He was looking to another remedy, the fine, which has failed him.

The counsel for the plaintiff has cited those cases, upon the authority of which, he claims to prevail. In *Hayward* v. *Leonard,* 7 *Pick.* 181, the Court say, " we mean to confine ourselves to cases, in which there is an honest intention to go by the contract, and a substantive execution of it, but some comparatively slight deviations, as to some particulars provided for." In such cases, they were disposed to sustain an action, where the real estate of the defendant had been rendered more valuable by the labor and materials of the plaintiff. Here there was no contract, and the plaintiff proceeded against the will of the defendants.

In *Hayden* v. *Madison,* 7 *Greenl.* 76, there had been a contract to make a piece of road, the greater part of which was completed. One of the conditions was, that the town should pay half the price agreed, when the road was done. A small portion of the distance was not made, which the town caused to be completed, and paid the plaintiff the one half of his claim. And this was principally relied upon by the Court as a waiver of strict performance, and he was permitted to recover the other half, deducting the expense incurred by the town in completing the road.

The principle stated to have been decided in the case last mentioned, by the late Chief Justice, in *Abbott* v. *Hermon,* 7 *Greenl.* 118, may be laid down more broadly, than that case will warrant. In the case last cited, there had been a contract by the plaintiff to build a school house. It was nearly but not quite, completed ; but it had been used for two successive winters, by the direction of the district school agent, for the district school. This was holden to be such an acceptance of the house, as rendered the district liable to the plaintiff.

If a man will voluntarily build a house, or make any other erection upon the land of another, against the will and against the protestations of the owner, although his estate may be rendered more

valuable by the erection, we have been referred to no case, which decides that he is under obligation to pay for it ; at least until he has manifested an unequivocal act of acceptance.

It has been urged, that a promise to pay for the bridge, may be implied from the use made of it by the defendants. It appears, that the plaintiff having erected his bridge, where a ferry had been established before, it had been passed over by the inhabitants of the plantation and others. The bridge was doubtless more convenient for the citizens than the ferry ; but it does not appear from the case, that the defendants were under obligation to build the bridge. The establishment of the ferry would rather justify a different inference. In *Hayden* v. *Madison,* where the benefit to the town was manifest, the use of the road by the public, was considered as very equivocal evidence, upon which to charge the town ; and we cannot regard it here as sufficient to sustain the action. As to what was done by the surveyor, that having been since the action, can have no effect upon it, if it would have had any, if it had been before, which is denied by the defendants.

According to the agreement of the parties, the verdict must be set aside, and a nonsuit entered.