## * THE INHABITANTS OF AUGUSTA *vs.* JABEZ LEAD- BETTER.

A town may purchase or receive a negotiable note for the purpose of meeting an expected claim upon the town by the payee; and may maintain a suit thereon, as indorsers, in the name of the town.

This power may be exercised by the town agent and selectmen without a vote of the town.

EXCEPTIONS from the Court of Common Pleas, REDINGTON J. presiding.

The action was brought by the plaintiffs as indorsees of a note given by the defendant to one *Armstrong* and by him indorsed. At the time of the trial in the Court of Common Pleas, there was an action pending in the same Court against the town for injuries alleged to have been sustained by *Leadbetter* by reason of a defective road within the town. The defendant called *Potter*, the attorney of the plaintiffs, who testified, that the promisee brought the note to him before this action was commenced, the witness being then the general agent of the plaintiffs, their treasurer, and one of their selectmen, and indorsed and delivered the note to him, and he gave *Armstrong* an accountable receipt therefor; and that after consulting with the other selectmen, with their assent, he brought this action. At the time the note was received of *Armstrong*, no action had been commenced against the town by *Leadbetter*, nor was it certain, that any suit would be brought by him. The witness stated, that he had disclosed all the authority he had to institute and prosecute the suit. The counsel for the defendant thereupon objected, that this action could not be maintained, because the note did not come into the hands of the plaintiffs in the regular course of business which towns are authorized to do; that the town never legally gave their assent to bringing the suit in their name, and had no interest therein; that neither the town agent, nor the selectmen, nor the treasurer, nor all combined, could legally assent to the using of the name of the town in bringing the suit; and that even the town by vote could not lawfully authorize the suit in their name, it not being within the corporate purposes for which towns are created so to lend the use of their name, or in any

---

* The Chief Justice, being an inhabitant of *Augusta*, did not sit in the hearing or determination of this case.

way to assume the prosecution of suits in which they have no interest. The Judge overruled all the objections, and instructed the jury, that on the facts the action could be maintained in the name of the plaintiffs. The verdict was for the plaintiffs, and the defendant filed exceptions.

*May*, for the defendant, argued in support of the objections made by him to the maintenance of the action at the Court of Common Pleas, and cited *Stetson* v. *Kempton*, 13 *Mass. R.* 272; *Bussey* v. *Gilmore*, 3 *Greenl.* 191; *Parsons* v. *Goshen*, 11 *Pick.* 396; *Willard* v. *Newburyport*, 12 *Pick.* 227; *stat.* 1821, *c.* 121, *sec.* 7; *Greene* v. *Bailey*, 3 *Fairf.* 254; *First P. in Sutton* v. *Cole*, 3 *Pick.* 240; *Bayley on Bills*, 47, *note A; stat.* 1821, *c.* 59, *sec.* 26; *Griswold* v. *North Stonington*, 5 *Conn. R.* 367; *Sherwood* v. *Roys*, 14 *Pick.* 172.

*Potter*, for the plaintiffs, argued, that the town, as a corporation, had power to bring and maintain a suit of this description; that this was one of the acts of the town exercised properly by their agent and selectmen in behalf of the town; that the town had authority by their officers to discharge the action, receive payment of the note, and give it up to them, and therefore sufficient authority to bring the suit; and that the common practice of transacting all such affairs by the officers of the town, and the great inconvenience of assembling the inhabitants to vote respecting every bargain, should have great weight, in giving a construction to the statute. He cited 2 *Kent's Com.* 274, 290; *Angell & A. on Cor.* 60, 94; *Willard* v. *Newburyport*, 12 *Pick.* 227; *stat.* 1821, *c.* 59, *sec.* 26; *Little* v. *O'Brien*, 9 *Mass. R.* 423; 3 *Cranch*, 208; *Marr* v. *Plummer*, 3 *Greenl.* 73.

The case was continued for advisement, and the opinion of the Court subsequently drawn up by

SHEPLEY J. — The promissory note upon which this action is brought, was payable to *William Armstrong* or order, and by him indorsed, directing it to be paid to the plaintiffs or their order. This is sufficient to pass the property to them, unless there is some legal objection to their title, arising out of their want of capacity to take for the purpose for which it was received, or out of the man-

ner in which it was acquired. Although it was received before the town agent knew, that the defendant would institute a suit against the town, yet it appears to have been taken in contemplation of such an event, which took place before this action was brought. Towns are authorized to commence and prosecute suits and may for this purpose appoint agents or attorneys. *c.* 114, *sec.* 7. The powers of the agent are limited only by the capacities of the corporation and by the nature of his employment. The selectmen are also agents to manage the prudential affairs of their towns, but they cannot assume powers, which do not belong to the towns for which they act. The law also contemplates, that towns may be the lawful holders of notes and other securities, but such power does not enlarge the capacities of towns, and enable them to take them for other purposes than those provided for by the law. This is not one of those cases in which the treasurer is empowered to sue in his own name; for it is only when the note or security is given to him, or to his predecessor, in their official character, that he can sue in his own name. *c.* 59, *sec.* 26. The action may then be well maintained in the name of the town, if the note was received for purposes coming within the legal action of the town, the title being lawfully acquired. Towns are obliged to keep their highways in repair, and are subjected to the payment of damages to the party injured by their neglect. And they may use all lawful means to defend themselves against the recovery of damages, and to provide for the adjustment and payment of any such damages. For this purpose they may borrow money, or purchase grain or other merchandise. For they would be acquiring property for the very purpose of enabling them to perform a duty enjoined by law. Can there be any doubt that for such a purpose the plaintiffs might by a legal vote have acquired the property in the note now in suit? If not, there can be none here, and the objection fails arising from their want of capacity to take. Whatever of authority could be legally exercised by the agent and selectmen existed in this case. The selectmen might draw an order to pay damages recovered against the town and thus bind the town. They and the agent might settle the suit brought by the defendant against the town, and bind the town by their acts. If they have power to accomplish an object have they not the choice of the legal means

by which it may be done? If they may settle and pay the defendant for the injuries, which he has sustained, may they not, if his carriage have been injured, procure materials and cause it to be repaired? When a traveller's horse has been injured may they not procure another for him to prevent delay and additional damages? And if they may do these things may they not at his request purchase from one of his creditors his note and deliver it to him in payment? And can his consent enlarge their power and authorize them to do that, which without it, they could not do? If the power to purchase a note for such a purpose be admitted, it no more implies a general power to traffic in notes, than the power to purchase materials and repair a carriage implies a general power to trade.

It has been decided that overseers of the poor may bind the town by their promise to pay for the support of a pauper chargeable to their town. *Belfast* v. *Leominster*, 1 *Pick*. 123. And that the selectmen acting as overseers may bind their town not to take advantage of a defect in a notice respecting a pauper. *Hanover* v. *Eaton*, 3 *N. H. Rep*. 32. And in this state, that the selectmen acting in that character may bind their towns by advancing money and prosecuting a suit to enable a female to charge one as the putative father of her bastard child, to avoid a contingent liability for its support. *Dennett* v. *Nevers*, 7 *Greenl*. 399.

The selectmen while acting upon the prudential affairs of their towns would upon the same principles possess a similar authority. The cases of *Davenport* v. *Hallowell*, 1 *Fairf*. 317, and *Blake* v. *Windham*, 13 *Maine R*. 74, and *Willard* v. *Newburyport*, 12 *Pick*. 227, exhibit the exercise by town officers of powers quite as extensive, which seem to have been approved.

In the case of *Griswold* v. *Stonington*, 5 *Conn. R*. 367, it was decided, that the selectmen had not power *virtute officii* to submit a claim on the town for the support of a pauper to arbitration; upon the principle, that where special powers are given by statute as in that state, the delegation of such special power excludes the general authority which might otherwise exist. The principle is doubtless correct, but it is not applicable to our legislation, where their powers in relation to the management of the prudential affairs of their towns are not defined by statute.

*Exceptions overruled.*