EZEKIEL AUSTIN *vs*. INHABITANTS OF YORK.
BRADFORD W. BLAISDELL *vs*. Same.

An article "to see if the town will vote to pay the same bounty to those who may enlist after" a specified time, "as is now paid by the town to those who enlisted before that time," does not authorize the vote to pay a larger bounty. (BARROWS, J., *dissentiente*.)

ON REPORT.

ASSUMPSIT for soldier's bounty. The case is sufficiently stated in the opinion.

*G. C. Yeaton*, for the plaintiffs.

1. The article in the warrant was sufficient for the vote of August 23d. R. S., c. 3, § 5 requires "the business to be acted upon" only to be stated in distinct articles. In *Blackburn* v. *Walpole*, 9 Pick. 97, the "subject" to be acted on was all that was necessary to be stated in the article. This case was approved in *Avery* v. *Stewart*, 1 Cush. 502. "To give previous notice of the subjects

to be acted on is the object of a warrant." *Torrey* v. *Milbury,* 21 Pick. 68. "If it gives intelligible notice of the subject to be acted upon, it is sufficient." *Grover* v. *Pembroke,* 11 Allen, 89. *Haven* v. *Lowell,* 5 Met. 40. *Hudsell* v. *Hancock,* 3 Gray, 526. *Alger* v. *Curry,* 40 Verm. 437. *Davenport* v. *Hallowell,* 10 Maine, 317. *State* v. *Beeman,* 35 Maine, 242.

The article stated the "business" and gave full intelligence of the "subject to be acted upon," to wit, "bounty to volunteers."

Counsel also contended that the vote was ratified by Public Laws of 1865, c. 298, § 1.

*E. B. Smith,* for the defendants.

DICKERSON, J. Action for soldier's bounty. Under an article in the warrant, calling the town meeting, "to see if the town would vote to pay the same bounty to those who may enlist, as volunteers in the army of the United States, after the 15th of August, 1862, as is now paid by the town to those who enlisted before that time, and make the necessary provision for funds for that purpose," the town voted "that the sum of $200 be paid to each person who shall enlist as a volunteer in the army of the United States . . . and that the treasurer of the town be authorized and directed, under the direction of the selectmen, to hire all necessary sums of money to pay the same."

At an adjournment of the same meeting it was voted, "that the bounty of $200 be increased to $300." The bounty paid by the town, to those who had previously enlisted, was $200. The town paid the plaintiff the $200, voted on the return day of the warrant, but refuses to pay the additional $100, voted at the adjourned meeting; and the question is whether the vote to pay this sum was authorized under the warrant.

Sec. 5, c. 3, R. S., provides that the warrant shall state, in distinct articles, the business to be acted upon, and prohibits action upon any other subject. The object of the statute is to secure to the inhabitants of the town, previous intelligible notice of the subjects to be acted upon; and when this is substantially done, the re-

quirement of the statute is complied with. *Grover* v. *Pembroke*, 11 Allen, 89.

Accordingly, it has been held sufficient to authorize a town to raise money for a particular purpose, when the subject, to be acted upon, was distinctly stated in the warrant, and was one which would be likely to require a grant of money. *Blackburn* v. *Walpole*, 9 Pick. 97. *Fuller v. Inhabitants of Groton*, 11 Gray, 340.

So an article in the warrant " to see what measures the town will take to provide a work-house, or house of correction for the reception, support, and employment of the idle and indigent, and such other persons, as by law be liable to be sent to such houses, and for the superintendence of the same," is sufficient to enable the town to empower the selectmen to contract with some person for the support of the poor for one year. *Davenport* v. *Inhabitants of Hallowell*, 10 Maine, 317.

In these and like cases, found in the reports, the article in the warrant was general in its description of the subject to be acted upon, giving the heads of the topics to be considered by the town, without calling for its action, yea or nay, upon a single distinct proposition. In such cases it is undoubtedly competent for the town to take into consideration and pass upon matters incidental to, or connected with, the main subject stated in the warrant.

In the case at bar, the article in the warrant called for the action of the town upon the question whether it would "pay the same bounty," to those who should enlist after a given time, as was then paid under a former vote of the town. The sum so paid was $200. The case is, therefore, the same as if the article in the warrant had been to see if the town would pay $200 to those who should enlist subsequently to a time stated. Had the town authority, under such a call, to vote to pay $300? We think not. The subject to be acted upon was not the general one, to see what bounty the town would pay, if any, but to see if the town would pay a particular sum, the same bounty as before. Citizens of the town, seeing such a notice, might reasonably presume that the town would not vote any larger sum than the one intended in the warrant, and

might safely refrain from attending the meeting, under this impression. Such a notice was a guaranty against voting a larger sum. An article in the warrant, to see if the town will raise $200 for a particular purpose, in general, gives no authority to raise a larger, though it might a smaller sum. If, under such a call, a town may legally raise $300, it would be difficult to fix a limit to the amount that might thus be raised, as that might depend upon the passion, caprice, or personal interests of the voters present at the meeting.

The town exceeded its authority in voting to pay the additional $100, at the adjourned meeting, and the judgment in both actions must be *Plaintiffs nonsuit.*

*Judgment for defendants.*

APPLETON, C. J.; CUTTING, KENT, DANFORTH, and TAPLEY, JJ., concurred.

BARROWS, J., dissented and submitted the following opinion.

BARROWS, J. I cannot help feeling as if the ratifying acts, passed by the legislature, making valid the doings of towns in the matter of voting bounties to volunteers, were designed to include all votes passed by the towns, at meetings regularly warned and holden, where the attention of the town had been called to the subject of bounties to volunteers by an article in the warrant, calling for action of some sort upon that matter.

And I do not think we ought to be more nice and critical in inquiring whether the vote was proper under the article in the warrant, than cases heretofore decided require us to be.

Where it is manifest that it was the fairly expressed intention of the town to give the bounty, and especially where the enlistment was procured under the understanding that the bounty had been, or would be, voted, I am in favor of sustaining the vote and the claim of bounty, if the people of the town had notice by the article, that some action was to be taken upon the question of bounties.

If we establish too nice rules for the action of towns, under the articles in their warrants, we shall certainly find ourselves compelled

to invalidate many of their doings which ought to be sustained. Why should we confine the town to a simple yea or nay vote upon the question, "whether they would give the same bounty," &c. ? I think they ought to be allowed, under such an article, to say what bounty they would give,—whether the same or a different one,—greater or smaller.

Why not, as well as to hold it competent for a town to pass a vote indemnifying a committee for taking a meeting-house under an article to see whether they would build a town-house and raise money for the same ?  *Hudsell* v. *Hancock*; 3 Gray, 526.   As in the case of the meeting called to hear the report of a committee appointed to buy a certain piece of land, it was held competent for the town to vote to buy another piece additional to that, what objection can there be to the town here passing any vote as to bounties, that being the general subject to which their attention is called by the article ?   It is useless to expect that town officers will state their topics with the accuracy that might be necessary in a power of attorney, and I think it ought to be sufficient if voters have a warning as to the nature of the questions likely to arise.  See *Davenport* v. *Hallowell*, 10 Maine, 317.