BELFAST & MOOSEHEAD LAKE R. R. Co. *vs.* INHABITANTS OF BROOKS.

*Warrant for town-meeting—sufficient article in. Selectmen—authority of under vote. Condition subsequent—subscription of stock on. Assessment on stock —when valid.*

An article in a warrant for a town-meeting is sufficient, if it gives notice, with reasonable certainty, of the subject-matter to be acted upon.

Thus, where the only mode provided in the charter of a railroad, by which towns interested therein may aid in its construction, is a subscription for its stock, an article in a warrant for a town-meeting 'to see if the town will loan its credit to aid in the construction of the' railroad named, gives reasonable notice, that a proposition to subscribe for stock will be acted upon, and will authorize such action.

Where, under such an article, the town authorized its selectmen to subscribe, in behalf of the town, for stock in the railroad named to the amount of sum specified, without designating the kind of stock, and the selectmen subscribe for the 'non-preferred stock,' the town is bound by the selection made.

Where the persons who subscribed for the stock, signed the subscription as selectmen, therein referring to the vote under which they acted, and were the same persons who called the town-meeting at which the vote was passed, it will be presumed, in the absence of any evidence, that any other persons had been elected or had acted as selectmen, that they were the selectmen.

Where railroad stock is subscribed for, in behalf of a town, upon the condition that the road 'shall be built through the town on the line as run by the engineer, with a suitable depot for the convenience of the public,'—such a condition is a condition subsequent, and will not defeat an action for the amount subscribed, although the condition had not been performed when the action was commenced.

The by-laws of a railroad company provided that no assessment shall be made upon any shares until the full amount of the estimated cost of the road shall first have been subscribed by responsible parties. It appeared that the estimated cost was subscribed; and the directors, acting in good faith, decided that the estimated cost had been subscribed by responsible parties, and thereupon proceeded to make the assessments; *Held*, That the assessments were valid; and that they could not be rendered invalid by showing, as matter of fact, that some of the subscribers were not responsible.

On REPORT.

ASSUMPSIT to recover balance of amount subscribed by the defendants in the plaintiff railroad company's stock.

So much of the plaintiffs' charter as is essential will be found in the opinion.

At a legal meeting of the defendants, held ± pril 25, 1867, called by a warrant signed by ' J. G. Morse, J. T. Collier, and A. G. Rose, selectmen of Brooks,' in which was an article—' To see if the town will loan its credit to aid in the construction of the Belfast & Moosehead Lake Railroad'—the following resolve was passed on a vote taken by yeas and nays,—102 voting yes, and 30 no:

*Resolved*, That the Selectmen be authorized to subscribe for stock in the Belfast & Moosehead Lake Railroad in behalf of the town, to the amount of 20,000 dollars, provided the location of said road, the terms of payment and all matters relating to the same, shall be satisfactory to them and to Ebenezer Page, Eben Littlefield, Jos. Ellis, jr., A. J. Roberts, J. M. Dow, who are hereby appointed a committee to consult and advise with the selectmen for that purpose.

The subscription was as follows :

' In accordance with the foregoing resolve passed at a legal meeting held at Brooks, April 25, 1867, we the subscribers, with the consent and advice of the committee therein named, do sub-

scribe for the twenty thousand dollars stock named in the resolve, being the non-preferred stock, on the following conditions, namely : That the railroad as proposed to be built from Belfast to Moosehead Lake shall be built through the town of Brooks on the track as run by Col. Wildes, or within fifty rods of the four corners of the road in Brooks village, with a suitable depot or station for the convenience of the public ; and that no further assessment shall be made on the town of Brooks, above the sum named in the resolve.

Dated at Brooks, alias Belfast, this 25th day of February, A. D. 1868.

> Signed,     L. T. COLLIER, ⎫ Selectmen       Shares at
>                             ⎬    of            $100 each
>             A. G. ROSE.    ⎭ Brooks.            200.'

Said subscription was made with the consent and approval of a majority of the committee named in the foregoing resolve, to wit, four of them, the other, Eben Littlefield being absent from town.

The sum voted and subscribed did not exceed twenty per cent of the valuation of the town.

Assessments on all the shares in the capital stock of said Company were made, and notice given as provided in section 5, of the Act of Incorporation, and the By-Laws of said company, as follows :

> 15 per cent, July 20, 1868.
>  5  "     "   March 27, 1869.
> 10  "     "   June 2, 1869.
> 70  "     "   August 2, 1869.

February 3, 1869, James G. Morse and M. Chase, two of the selectmen of Brooks, paid to the Treasurer of the company $1500, on account of the first assessment on the shares subscribed for, acting under no authority other than the vote of April 25, 1867.

The remaining facts sufficiently appear in the opinion.

If the action was maintainable, the plaintiffs were to have judgment.

*A. G. Jewett,* for the plaintiffs.

*A. P. Gould*, for the defendants.

1. By Pub. Laws of 1867, c. 119, the defendants might do just what was proposed by the article in their warrant—'to loan its credit' to aid in the construction of the plaintiffs' road. This method was familiar to the people of the State when the plaintiffs voted.

The subscription for stock was of more recent origin. The language employed by the defendants, is in the Act of Aug. 17, 1850, and numerous other private acts before 1867.

The purpose of the meeting was to see if the town would do a particular thing authorized by the laws of the State.

Under the charter, the defendants might have called a meeting to see whether the town would subscribe for stock.

R. S. of 1857, c. 3, § 5, requires the business to be stated 'in distinct articles,' etc. This is more explicit than the statute of Massachusetts, which requires only the 'subject-matter' to be stated.

The Pub. Laws permitted towns to aid in construction of railroads by 'loan,' and the charter by 'subscribing for stock.'

This warrant was to see if the town would do what the public law authorized it to do—loan its credit.

Loaning credit and subscribing for stock, are radically different in every essential.

The inhabitants may have been willing to risk a loan, but not to invest in stock.

The meeting disregarded the article in the warrant.

The meeting was not 'legally called therefor.'

The Massachusetts cases are under their statutes and do not support this vote.

2. The payment of $1,500 by Morse & Chase was no ratification, as they had no authority to pay, but it was a misappropriation.

3. It does not appear that Collier and Rose were, in fact, selectmen of the town. Their assumption does not prove them selectmen *de facto*; undisputed instances of exercising the office are necessary. The only other instance in which they assume to act for the

town, was in calling the meeting of April, 25th, and their authority is in controversy. No record showing that they were ever elected, at a meeting legal or illegal, was produced, hence the case is not like *Cushing* v. *Frankfort*, 57 Maine, 541.

4. If the vote gave any authority to subscribe for stock, the fair implication would be that they were to subscribe for the best class of stock, in the absence of authority to subscribe for that of less value.

5. The condition of the subscription was a condition precedent, and must be fulfilled before payment. *Portland & O. C. R. R. Co.* v. *Hartford*, 58 Maine, 23.

An essential element in the subscription was, that the road should be built from Belfast to Moosehead Lake, this was of great interest to the defendants.

Another condition was, that a suitable depot should be built in Brooks for the convenience of the public. The conditions are not incidental to the main design, so far as the defendants are concerned, but they were important elements in the consideration of the agreement to take stock. They became conditions precedent. At the time of the commencement of the action, no depot had been built and the road not completed through the town.

6. It does not appear that the condition of Art. 17 of the by-laws, was in all respects fulfilled to enable the assessments to be made.

It does not appear that the amount was subscribed by ' responsible parties.' Half of them may be of no value. It was just as important to the responsible subscriber, that subscriptions, to the amount required, should be made by responsible parties, as that the subscription should be to the required amount.

It does not appear that the preferred stock, and the conditional subscriptions were not embraced in the ' amount subscribed for in the books of said company.' *Lewey's Island R. R. Co.* v. *Bolton*, 48 Maine, 451, 455.

WALTON, J. The charter of the Belfast & Moosehead Lake Railroad Company, provides that cities and towns, interested in its construction, may, by a two-thirds vote, subscribe for stock therein; and that such vote shall be obligatory upon such cities and towns, for the payment of the amount so subscribed. Special Laws of 1867, c. 380, § 19.

It will be noticed, that by the terms of this act, the obligation resting upon towns and cities to pay the amount subscribed by them is absolute; that the language of the charter is, that 'such vote shall be obligatory on said city or town for the payment of the amount so subscribed;' that no conditions whatever are annexed.

The town of Brooks voted by the requisite majority to subscribe for stock in the above-named railroad to the amount of $20,000. Only $1,500 of the amount has been paid, and this is a suit to recover the balance.

The right to recover is resisted upon several grounds, which we will consider in the order they are presented in the brief of the learned counsel for the town.

1. It is said that the vote was not authorized by the article in the warrant.

It is undoubtedly true that the warrant for a town-meeting must specify, in distinct articles, the business to be acted upon; and that no other business can properly be acted upon at such meeting; but technical precision, in the wording of the articles is not required. It was long ago found, that to require entire technical accuracy in the wording of such articles, would be to impose upon town officers a duty which, in many cases, they could not perform.

The rule running through all the decisions is that an article, in a warrant for a town-meeting, is sufficient if it gives notice with reasonable certainty of the subject-matter to be acted upon. *Grover* v. *Pembroke*, 11 Allen, 89; *School District* v. *Blakeslee*, 13 Conn. 234.

It is said in the first of these cases, that a warrant for a town-

meeting is not to be construed with the same strictness as a power of attorney or a penal statute ; that it is sufficient if it gives intelligent notice of the subjects to he acted upon ; and in the second, that it is not necessary that the notification should be drawn up with all the formality of a special plea ; that all that is required is, that the inhabitants may fairly understand the purpose for which they are to be convened.

The article in the warrant now under consideration is as follows :

' To see if the town will loan its credit to aid in the construction of the Belfast & Moosehead Lake Railroad.'

In determining whether this article was sufficient to give notice, with reasonable certainty, that the town would be required to vote upon the proposition, whether or not they would subscribe for stock in the road, it is necessary to take notice of the provisions of the charter of the road, which, being a public act, every one is presumed to have had notice of.   The charter declares, that cities and towns interested in the construction of the road, may subscribe for stock therein ; and this is the only mode provided in the charter, by which towns and cities could aid in the construction of the road. Now when the meeting was called to see if the town would loan its credit to aid in the construction of the road, could there have been any doubt, in the mind of any one, as to the mode by which the aid would be furnished ?   Could any one have doubted that if the town should vote to use or loan its credit to aid in the construction of the road, the manner of granting the required aid would be by a subscription for stock ?   Can there be any doubt that the article gave notice with reasonable certainty, that such a proposition would be acted upon ?   We think not.   The great and leading purpose of the meeting was to see if the town would aid in building the road.   A subscription for stock was not only a lawful mode, but it was the only mode authorized by the charter, by which such aid could be furnished.   A ' loan ' of credit is a ' use ' of credit.   It is so defined in the later editions of Webster's dictionary.   And such, we have no doubt, is the meaning universally attached to the term in this community.   Towns are said to loan

their credit to railroads, when they use their credit to aid in building them. And this is oftener done in this community by subscribing for stock, and then issuing their bonds to raise the money to pay for the stock, than in any other mode. And this is almost universally spoken of as loaning the credit of the towns. And when the only article in a warrant for a town-meeting is ' to see if the town will loan its credit to aid in the construction of a railroad,' and the only mode provided in the charter of the road, by which such aid can lawfully be given, is a subscription for its stock, we cannot doubt that the article is sufficient to give the inhabitants reasonable notice that a proposition to subscribe for stock will be acted upon.

And we are strengthened in this conclusion by the fact that no one of the voters of the town of Brooks appears to have objected to the sufficiency of the article in the warrant. Subsequent meetings were called to see if the town would not rescind its vote, and undoubtedly much discussion was had as to the propriety of it; but nothing appears to show that it ever entered into the mind of any one that the article in the warrant was not sufficient to authorize it. We think it was sufficient.

2. It is said that the fact that the railroad company accepted the subscription in good faith, and. the fact that the selectmen of the town of Brooks paid $1,500 of the amount subscribed, should not be regarded as a ratification by the town of the act of the selectmen in subscribing for the stock, so as to bar the town of the right to object to the sufficiency of the article in the warrant. As we hold that the article was sufficient, this question becomes immaterial, and need not be discussed.

3. It is said that the subscription by the selectmen should have been for the best kind of stock, not for the non-preferred stock. The answer to this objection is, that the vote of the town did not direct the selectmen to subscribe for the best kind of stock. The vote is silent as to the kind of stock to be subscribed for. And when we consider the purpose of the town in authorizing the subscription,—that it was to aid in building the road, and to make the

enterprise a success,—it seems to us more than probable that it was the non-preferred stock which the town expected their selectmen to subscribe for, as such a course would be most advantageous to the road, and most likely to secure its completion. But however this may be, as the town did not choose to designate the kind of stock to be subscribed for, but left the selection to their selectmen, we think they must be bound by the selection which the selectmen made.

4. It is said that the case does not show that the subscription for stock was made by the acting selectmen of the town. We think it does. They certainly acted for the town in making the subscription. But this is not all. It appears that they called the town meeting at which the vote was passed authorizing the subscription. In the absence of any evidence or suggestion that any other persons had been elected, or had acted, as selectmen of the town, we think it may very properly be presumed that these men were not usurpers,—that they were in fact what their acts indicate, not only the acting selectmen of the town, but the persons actually chosen to that office.

5. Another objection is that the stock was subscribed for upon condition that the road should be built through the town of Brooks, on the line run by Col. Wildes, and that a suitable depot should be erected for the convenience of the public. This is true. But the case shows that the road has been built on the line indicated. The case also shows that a convenient depot has been built. It is true that the work had not been completed when this suit was commenced ; nor was it necessary that it should be, unless its performance is held to be a condition precedent. We hold that it was not. The object of the subscription was to furnish the means for building the road. Unless the means were first furnished the road could not be built. It would be unreasonable to suppose that it was within the contemplation of the parties that the road should be built first and the means furnished afterwards. The performance of the work was not, therefore, a condition precedent, but a condition subsequent. It is well settled that such a condition will

not defeat an action for the recovery of the money, notwithstanding it had not been performed when the action was commenced.

6. It is said that the by-laws of the railroad company provided that no assessments should be made until the full amount of the estimated cost of the road should be subscribed by responsible parties, and that it is obligatory upon the plaintiffs to show affirmatively that this condition has been complied with. The plaintiffs do show affirmatively that the estimated cost of the road was subscribed before the assessments in question were made; and there is no evidence before us that the parties who made the subscriptions were not responsible. In the absence of proof to the contrary, we think it but reasonable to presume that in the judgment of the directors they were responsible (otherwise they would not have made the assessments), and this is all that the law requires. If the directors, acting in good faith, came to the conclusion that the subscriptions were made by responsible parties, and thereupon proceeded to make the assessments required to carry forward the enterprise, the assessments would not be rendered invalid by proof that they erred, and that some of the subscribers were not in fact responsible. Whether or not the requisite amount had been subscribed by responsible parties must necessarily be decided by the board of directors, for there was no other person or persons, or tribunal, by whom the question could be determined at that stage of the proceedings; and if they, acting in good faith, came to the conclusion that the estimated cost of the road had been subscribed by responsible parties, and thereupon proceeded to make the assessments, we think the assessments would be legal, and that they could not be rendered invalid by showing, as matter of fact, that some of the subscribers were not responsible. To hold otherwise would be a dangerous doctrine. It would probably destroy ninetenths of all the assessments made in similar enterprises, and throw the business of the companies into chaotic and inextricable confusion. We think this objection is not sustained.

We have now considered all the objections raised by the learned

counsel.for the defendants.  None of them, in our judgment, are sufficient to defeat the action.

And in conclusion it may not be improper to add that while, in the judgment of the court, towns and cities cannot be too careful how they engage in such enterprises; yet when they have engaged in them, and large expenditures have been made on the faith of their subscriptions, and the loss, if they escape, must fall upon other parties, they must not expect the court to strain the law to relieve them.

> *Judgment for plaintiffs for the balance due upon the assessments made upon the shares subscribed for by the defendants, with interest from the time when the assessments should have been paid—the amount of interest, in case of disagreement, to be determined by a judge at nisi prius.*

CUTTING, BARROWS, VIRGIN, and PETERS, JJ., concurred. DICKERSON, J., took no part.