## Case No. 12,363.
### SARGENT v. INHABITANTS OF BRISTOL.
[2 Hask. 112.] [1]

Circuit Court, D. Maine. Dec., 1876.

TOWNS—SERVICES OF DETECTIVE—COMPENSATION.

A detective employed by a town agent to ascertain what individuals composed a mob that destroyed property for which the town was liable to make compensation, may recover of the town reasonable compensation for his services, with interest from the time he demanded payment for the same.

Assumpsit to recover reasonable compensation for services rendered as a detective on employment by a town agent. The case was tried upon the general issue, and a verdict was rendered for the plaintiff [Moses Sargent], whereupon the defendants moved for a new trial for misdirection by the court.

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

Almon A. Strout and Nathan Webb, for plaintiff.

Bion Bradbury, for defendants.

FOX, District Judge. By the law of Maine, towns are made liable to the owners of any buildings injured or destroyed by a mob, for three-fourths of the injury if it exceeds fifty dollars, if the owner uses all reasonable diligence to prevent such injuries and to procure the conviction of the offenders; and the town paying such sum may recover it in an action of the case against the person doing the injury.

In April, 1848, Breitman & Sons were the owners of a porgy oil factory in the town of Bristol, which was destroyed under such circumstances that the town was responsible to the owners for three-fourths of the injury, as they claimed, and they accordingly notified Arnold Blaney, chairman of the selectmen of the town of Bristol and also town agent, that they intended to hold the town accountable, and after protracted litigation, their claim was eventually sustained, and they recovered damages for a large amount in an action brought by the Breitmans against the town. The plaintiff, a well known detective, was engaged by the Breitmans to assist them in discovering the offenders and to procure their conviction; he was employed by them in this duty for twenty-five days; at the end of that time, Blaney was notified by the Breitmans that they no longer had occasion for Sargent's services and should then discharge him. The plaintiff contended that after this, he was employed by Blaney as town agent, in the town's behalf, to continue his investigations and aid in discovering the guilty parties; and to recover his compensation for his services so rendered, this action was instituted May 13, 1873, Sargent having before that commenced an action against Blaney, in which he claimed to hold him personally accountable to him for the payment of those services. After the suit was brought against Blaney, the town of Bristol at a meeting held in March, 1872, voted that Thomas Nichols confer with Moses Sargent and make the "best settlement he can." At the April term, 1873, the action of Sargent v. Blaney was entered neither party, and the present suit was instituted.

The jury were instructed that, "if Arnold Blaney, as town agent of Bristol, was notified by the Breitmans that they should claim to hold the town of Bristol responsible to them under Rev. St. 1857, c. 123, for the damages sustained from the alleged mob, and thereafterward, Blaney, as town agent and in behalf of the town, employed the plaintiff as a detective to discover the guilty parties that the town might obtain indemnity therefrom, and afterwards the town at a meeting duly called and held, March, 1872, passed the vote read from the record of the meeting," they would be authorized to find the town responsible to the plaintiff for his services for the time so employed. A verdict having been rendered for the plaintiff, the defendants move for a new trial, on the ground that this instruction was erroneous. By Rev. St. 1871, c. 3, § 1, it was enacted, "the inhabitants of each town, are a body corporate, capable of suing and being sued and of appointing agents and attorneys;" and the same language is found in Rev. St. 1841 and 1857. The act of 1821 (chapter 113, § 7) was more precise and definite in this behalf, as it in terms authorized towns to commence and prosecute any suit and to defend suits or actions commenced against them; and it provides that the "said inhabitants qualified and convened in manner aforesaid may nominate and appoint one or more agents or attorneys;" and this is the precise language of the act of Massachusetts of 1786.

Although the language of our Revised Statutes is general, indefinite and vague, in thus authorizing towns to appoint agents and attorneys without any restriction or limitation as to the purposes and extent of such agency, we are of the opinion that it was not the intention of the legislature in any degree to vary or extend the law from what it had always been in Massachusetts and this state, or to confer on the agents thus appointed other, or greater authority than they had previously possessed; and that agents so chosen can not be deemed general agents of the town in all its matters, with authority on all occasions to act for and in the town's behalf, but they are the rather to be deemed special agents of the town, selected "for the purpose of commencing and prosecuting suits in behalf of the town and of defending the town in actions instituted against it." Such person is the agent of the town relative to its legal controversies in all such matters, to act as and for the town in representing and protecting its legal rights, with all the requisite power and authority conferred by the town upon him to accomplish the object and purpose of his agency; and that such agent has authority to employ counsel to defend an action brought against the town was decided by the supreme court in Knowlton v. Plantation No. 4, 14 Me. 20, thus recognizing his authority without the concurrence of the other town officers, to incur liabilities in behalf of the town in defense of a suit already commenced.

In Pittston v. Clark, 15 Me. 460, it was claimed by the town that a town agent being appointed according to the provisions of the statute becomes an officer of the law and bound to perform his duties in prosecuting and defending suits according to law, whether in so doing he conforms to or disobeys the instructions of his principal; but this claim was not sanctioned by the supreme court. Mr. Justice Shepley in the opinion says: "The statute providing for their appointment does not prescribe their duties or define their powers. It only gives them the right to represent their town and perform such acts as their principal might perform by

any other agency which would legally represent them; and to ascertain the relative rights and duties of towns and town agents, reference must necessarily be had as in other cases to the laws of the land." This view is sustained by the language of Parker, C. J., in Inhabitants of Buckland v. Inhabitants of Conway, 16 Mass. 395. "A vote to choose agents and a choice in conformity thereto is equivalent to a full power of attorney. Agents thus appointed have the power of substitution or delegation, &c." In Fletcher v. City of Lowell, 15 Gray, 103, it was held, that a vote of the city council referring to the mayor a petition for a jury to assess damages, &c., and authorizing the mayor to employ such counsel as might be deemed expedient, "conferred on the mayor full power to retain counsel for the purpose of procuring evidence, preparing the case for trial and for doing any act usual and proper in the conduct and management of the suit in all its stages." In Augusta v. Leadbetter, 16 Me. 45, it was decided, that a town agent with the assent of the selectmen might purchase a negotiable note for the purpose of meeting an expected claim upon the town by the payee. Shepley, J., says: "The powers of the agent are limited only by the capacities of the corporation and by the nature of his employment." Whether an authority of an agent be general or special, it is declared by Story in his work on Agency, "as always considered to include all the necessary and usual means of executing it with effect."

In the present instance, the law having authorized the appointment of an agent by a town for the purpose of commencing and prosecuting suits in the town's behalf, as well as to defend those commenced against it, such agent is to be considered as having conferred upon him all means usual and necessary for the proper discharge of the duties of such agency. It will be observed his authority is not restricted to the defense of the town in suits instituted against the town, but he may and should commence and prosecute in the town's behalf all such actions as he shall judge proper for the protection of the town; and whatever steps he may deem judicious and reasonable for him to adopt, relative to such claims and prior to any suit, we think by implication he is authorized to pursue, although by so doing some expenses may be incurred for which the town will be chargeable. His authority is like that of any other agent to whom is entrusted by his principal the care and protection of his legal rights in his absence; and it must be held broad enough to accomplish the object intended. Such an agent may not only employ an attorney to commence the suit for his principal if he shall deem it expedient so to do, but any preliminary proceedings he may deem requisite and proper, he may first initiate in order to ascertain whether a cause of action exists and against whom the suit should be brought; and to this end, he may employ a detective

in behalf of the town in a case like that now presented for our determination. Such authority we hold is ample from the very purpose and nature of the agency. The rights of the principal in many cases could not be ascertained and understood without such assistance; it is the duty, most certainly, of a party to make due inquiries and satisfy himself that he has good reasons for instituting his suit before he commences the same, and any agent he may employ to act in his behalf in the matter is bound to exercise the same prudence and discretion and make all proper investigations before he involves his principal in a suit at law.

Many instances may be suggested in which it would be manifestly the duty of such an agent to adopt measures in such investigations before commencing an action for his principal, and which would be likely to be attended with considerable expense; and if without such investigation, he should commence the action, and for want thereof fail to sustain the same, he might well be held accountable to his principal for all damages occasioned by such neglect and inattention on his part; for instance, an important witness for his principal might be about to leave the state, would it not be the duty of the agent, if put upon inquiry by being advised generally as to such witness, to take active measures to ascertain all the facts relative to the witness and the nature and effect of his evidence, and to perpetuate his testimony, if he should find it of material importance? The expenses thus incurred most certainly must be borne by the principal, his agent having exercised a reasonable prudence and discretion in his proceedings.

The instruction as given was restricted to the authority of the agent thus to incur expense relative to a suit proposed to be instituted by him in behalf of the town. But we are well satisfied that it equally exists for the proper investigation of claims against the town before suit is instituted. Suppose a claim to be presented against the town for damages occasioned by a defect in a highway; can it be questioned that it would be the duty of the town agent to make due inquiry and careful investigation as to such defect, its nature, extent and duration, and that for his time so devoted to the investigation he would be entitled to demand of the town a reasonable remuneration? If doubts arose as to the location of the highway, and whether the defect was or not within its limits, would it not be the duty of the agent to ascertain and determine this question, and if necessary for this purpose could he not cause a survey to be had at the town's expense? Perhaps no stronger case can be presented than the present in illustration of the propriety of recognizing and sustaining the implied power and authority of a town agent, at the charge of the town, to incur reasonable expense in investigating an alleged liability, and the town's right to demand indemnity from oth-

ers, although suit had not then been commenced.

The statutes of this state rendered the town of Bristol accountable, under certain conditions, to a party whose buildings were destroyed by a mob, for three-fourths of their value; and by the same statutes the town was entitled to recover from the offenders the amount thus paid. The party injured notified the town authorities that he intended to hold the town accountable to him. Under such circumstances it would seem to be the imperative duty of the agent to adopt all necessary precautionary measures, not only to ascertain whether the town could successfully resist the demand, but also to seek out the offenders, and discover whether they could respond to the claim of the town against them for an indemnity. Such investigations, ordinarily, could not be judiciously prosecuted by a town agent without aid from other sources; for the detection of criminals, the services of those experienced in such matters are frequently of great assistance; and the judicial investigations, in this state, of more than one offense, have made very manifest the skill and experience of the plaintiff in his calling, and that through his aid notorious offenders have been brought to justice. Under the instructions, the jury must have found that, the Breitmans having made their claim against Bristol, its town agent employed the plaintiff to assist in detecting the offenders, that indemnity might be had from them; and for his services so rendered we think the town was responsible.

The effect of the vote of the town at the meeting in March, 1872, upon the town's liability, it is not necessary for us to determine, as we are of opinion that excluding such vote, upon the other testimony in the cause, the defendants are liable to the plaintiff for the value of his services.

It is said the damages are excessive. The claim in the writ is for $555.40 for personal services, at the rate of $10 per day and expenses. In this amount is included services for seven days, from July 23, which it is manifest should not be charged, amounting to $70, and also $42 for board and horse hire for sixty-five days, which includes the twenty-five days plaintiff was in the employ of the Breitmans that should be charged to the Breitmans, leaving a balance of $86.15 due from the town. It is also said that for his time and expenses, attending before the grand jury, amounting to $65.50, the defendants are not liable. Plaintiff was recognized to appear before the grand jury to testify against the parties bound over for this offense, and he swears that he has always been paid for his time on such occasions, and we think it could hardly be expected that he would attend before the jury without being compensated at the usual rate by his employer. The only deduction we should make from his claim would be the $86.15, leaving a principal of $469.42.

A demand was made on Blaney by plaintiff in the fall of 1868, and again in the spring of 1869, and we are of the opinion that the jury were authorized to allow interest from the demand if they saw fit. Their verdict, $645.-80, indicates that they probably deducted the entire $42 from the claim, instead of a proportionate part thereof, but allowed interest from the demand in the spring of 1869, or for something over seven years. On the whole, therefore, we are of opinion that the defendants have no cause to complain of the amount. Motion overruled. Judgment on the verdict.