**STATE of Maine**

v.

**TOWN OF FRANKLIN.**

Supreme Judicial Court of Maine.

Argued Jan. 14, 1985.

Decided March 26, 1985.

Cabanne Howard, Asst. Atty. Gen. (orally), Augusta, for plaintiff.

Peter M. Beckerman (orally), Waterville, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiffs, the State of Maine and the Board of Environmental Protection (the "BEP"), appeal from a judgment of the Superior Court (Hancock County) in favor of defendant, the Town of Franklin (the "Town"). Plaintiffs sought to enjoin the Town from continued operation of the Town's solid waste disposal facility and to exact civil fines from the Town for the Town's operation of the facility. Plaintiffs' base their claim on an Administrative Enforcement Order and Consent Agreement signed by the Board of Selectmen of the Town, the BEP, and the State. The Superior Court ruled in favor of the Town after holding that the Order and Consent Agreement was "null and void" because the Selectmen "lacked the capacity to enter into the agreement." Plaintiffs argue on appeal that the execution of the Order and Consent Agreement was authorized by a vote of the Town on an appropriate article set forth in a warrant for a town meeting. Alternatively, plaintiffs assert that even in the absence of a vote of the Town, the Board of Selectmen possessed inherent authority to enter into the Agreement. We conclude that the authorization of the Town was required and that it was not obtained. We deny the appeal.

## I.

The Town has fewer than 1,000 inhabitants and is governed by a town meeting form of government with certain administrative and executive powers resting in a Board of Selectmen. For a number of years the Town has operated a municipal dump on leased land located within the township. In 1973, the Legislature enacted 38 M.R.S.A. § 421 (P.L.1973, ch. 156) known as the 300-foot law. The principal feature of the law is the requirement that no "solid waste disposal area shall lie closer than 300 feet to any classified body of surface water." 38 M.R.S.A. § 421 (Pamph.1984).

In 1977, the BEP ordered the Town to close the existing dump and find a new site. The Town did neither. In 1981, as a result of inspections of the dump site and a history of complaints to the Town from the BEP, the parties entered into the Order and Consent Agreement. Plaintiffs describe such an agreement as a means "to achieve non-judicial resolution of disputes concerning violations" of statutes designed to protect the environment. The document consists of: 1) an order issued pursuant to 38 M.R.S.A. § 347(1) (1978 and Pamph. 1984) aimed at violations of the statutes, and 2) an agreement to pay civil penalties to the BEP for past violations and for future non-compliance. *See* 38 M.R.S.A. § 349(2) (Pamph.1984) (as amended by P.L. 1983, ch. 796).

In this case the Agreement charges the Town with a number of violations: failure to close the site as ordered, failure to arrange for a new site, and failure to conform to solid waste management regulations in operating the dump. The Agreement provides that plaintiff release all causes of action for violations, in return for which the Town agrees to conform to proper solid waste management procedures at the existing site, and close the site by July 1, 1982. The Town agrees to pay the State

$1,000 per month for any violations of the Order and Consent Agreement from the date of the Agreement through December 31, 1982, and in any event, to pay the State $250 before June 1, 1981. The Agreement does not mention the 300-foot law expressly; and neither in the Agreement, nor at trial did plaintiffs allege that the Town's dump pollutes any classified surface water bodies. The First Selectman of the Town's Board of Selectmen signed the Agreement on May 21, 1981 after being authorized to do so by his fellow board members.

In September of 1982, as a result of the Town's failure to close the old dump site, plaintiffs filed the present complaint seeking an injunction and the imposition of civil penalties against the Town on the basis of the Agreement. Included in the thirty-six affirmative defenses and three counterclaims asserted by the Town, was a denial of the validity and enforceability of the Agreement. Following a non-jury trial, the Superior Court found the Agreement to be null and void and entered judgment for the Town on plaintiffs' complaint. Judgment was entered for plaintiffs on the Town's counterclaims. Plaintiffs appeal from the judgment entered for the Town.

## II.

The State first argues that the execution of the Agreement was authorized by the voters of the Town at the annual town meeting in March of 1981. Included in the warrant for the town meeting was the following article:

> To see what sum of money the Town will raise and appropriate for the relocation of the Town Dump.

In response to the article, the Town "[v]oted to raise $15,000.00 for Reserve Fund for Town Dump for such time as selectman study and make arrangements for the best interest of the Town." [1] It is the position of the State that the article and the vote taken thereon constitute sufficient

---

**1.** At the next Annual Town Meeting, held in 1982, the Town voted to continue to use the existing dump site and appropriated the unex- pended $15,000.00 reserve fund for that purpose.

authorization for the Board of Selectmen to enter into the Agreement and bind the Town.

■ The Superior Court focussed primarily on the sufficiency of the article in the warrant and found it to be lacking. We reach the same end result, but we follow a different line of analysis. We begin with the proposition that the burden is not on the Town "to establish the absence of authority", rather, it is the plaintiffs' burden to prove the authority to act. *Sirois v. Town of Frenchville*, 441 A.2d 291, 294 (Me.1982).

■ The requirements for town meeting warrants are set forth in 30 M.R.S.A. § 2052 (1978):

The warrant for calling any town meeting shall meet the following requirements.

1. ...

2. **Business to be acted upon.** It shall state in distinct articles the business to be acted upon at the meeting, and no other business may be acted upon.

It is beyond dispute that technical precision is not required in drafting warrants and that the sole function of the warrant is to provide reasonably certain notice of the subject-matter to come before the town meeting. *See Perry v. Town of Friendship*, 237 A.2d 405, 407 (Me.1968); *Belfast & Moosehead Lake Railway Co. v. Inhabitants of Brooks*, 60 Me. 568, 573 (1872); *Austin & Blaisdell v. Inhabitants of York*, 57 Me. 304, 305 (1869). Clearly the article in question placed the voters on notice that the relocation of the dump, and raising money for that purpose, would be discussed. We are satisfied that the article served its purpose and that the statutory requirement of subject-matter notice was accomplished.

■ The only potential source of express authority for the action of the Selectmen is the vote taken at the town meeting. The fact that the article was sufficient to permit consideration of the Agreement offered by the State, does not suggest that the Town agreed to enter into such an Agreement. The meaning of the vote that was actually taken is far from certain. Plaintiffs argue that the phrase "make arrangements for the best interest for the Town" authorized the Selectmen to enter into the Agreement. It is unclear, however, whether that phrase constitutes a grant of general authority or whether it defines the probable duration of the Reserve Fund. Reading the language as a whole we are unable to conclude that it constitutes a grant of authority to the Selectmen to commit the town to closing the dump and accepting substantial financial penalties in the event of any violation. If the language is considered as setting forth authority for the Board of Selectmen, it refers to initiatory or preliminary action rather than the authority to execute an agreement binding on the Town.

■ In short, we are unwilling to strain the language of the vote in order to uphold the action of the Selectmen. We have previously noted that:

Our court has been zealous in protecting the rights of property owners from seizure for the debts of the municipality. On numerous occasions the rule has been stated that a person dealing with officers or agents of a municipality does so at his peril, and that it is his duty to determine whether the parties with whom he is contracting were authorized to make the contract.

*School Administrative District #3 v. Maine School District Commission*, 158 Me. 420, 425–426, 185 A.2d 744, 747 (1962). The same rule applies with equal force when the State seeks to enforce a contract with a Town. If the property owners in a community are to be charged with an obligation, the authority of the person acting for the Town must be established.

### III.

Finally, the State argues that the authority to execute the Agreement is inherent in the office of the Selectmen and that town meeting authorization is not required.

First, it is asserted that the Board of Selectmen possess inherent authority specifically to control litigation and, second, that the board members have broad inherent authority to enter into contracts on behalf of the Town. The State candidly admits that there is little statutory or precedential support for either proposition.

■ On the question of inherent authority to control litigation, the only decision cited by the State is *Knowlton v. Inhabitants of Plantation No. 4.*, 14 Me. 20 (1836). In that case the Law Court permitted the general agent of a plantation to hire counsel to appear on behalf of the plantation, apparently without authorization or objection from the inhabitants. Although the exact import of the decision is unclear, it neither creates nor recognizes a reservoir of inherent authority to compromise litigation. If we were to assume that the Board of Selectmen has inherent authority to conduct legal affairs or to enter into contracts for the Town, such authority would not include a settlement agreement that requires the Town to accept a substantial civil penalty in order to prevent threatened litigation. In the absence of authorization or ratification by the Town, the action of the Board of Selectmen is not binding on the Town.

The entry is:

Judgment affirmed.

All concurring.