DEBORAH W. LINCOLN *vs.* INHABITANTS OF STOCKTON.

Waldo. Opinion May 7, 1883.

*Towns. Municipal indebtedness. Selectmen.*

Where the selectmen borrow money on a town order to pay an outstanding debt of the town, without authority from the town, and the evidence fails to establish what is in fact and law a payment of the original debt, there is no liability on the part of the town to pay the order representing the new loan when there has been no corporate action in relation thereto.

Assumpsit declaring on a town order for one thousand dollars, dated July 19, 1876.

The writ was dated July 19, 1881, and the plea was the general issue.

At the trial it was agreed by the parties that the presiding judge should submit a single question to the jury, which with their answer thereto, should make a part of the case and the whole case should then be submitted to the law court.

The jury rendered the following verdict:

" The jury find that the money obtained of the plaintiff and for which the order declared on was given was used by C. C. Roberts to pay the order previously given to Mrs. Griffin."

The defendants moved to set this verdict aside as against evidence, the weight of evidence and against law. The case was

then reported with stipulations as follows: "If this motion is sustained by the law court a new trial is to be granted. If the motion is not sustained, then the law court is to examine the whole case, including all the evidence legally admissible, together with the special finding of the jury, and render such judgment as the legal rights of the parties require."

The opinion states the material facts.

*William H. Fogler*, for the plaintiff.

The plaintiff claims to recover of the town, under the law as laid down in the recent cases of *Billings* v. *Monmouth*, 72 Maine, 174; *Belfast Nat. Bank* v. *Stockton*, Id. 522.

In the case at bar, the original debt was a judgment of this court. That this was a legal debt, a legitimate liability, there can be no question. The then selectmen hired money of Mrs. Griffin to meet that liability, in part, and delivered the amount in payment, *pro tanto*, of that judgment. Fourteen days after the money was hired of Mrs. Griffin, the town voted to leave the matter of raising money by loan, or otherwise, with the selectmen.

This vote was an authority to the selectmen to hire money for that purpose. I submit that it would be a ratification of money previously hired.

In July, 1876, the selectmen for that year hired money of this plaintiff for the purpose of paying Mrs. Griffin the money loaned by her in 1874, and by the hand of Mr. Roberts, chairman of the board, paid the money to Mrs. Griffin and took up the order held by her.

"The vital question" is whether a legal debt of the town has been extinguished by the money loaned by the plaintiff.

While it is true, as stated by this court in *Belfast National Bank* v. *Stockton*, that to operate as an extinguishment of the debt of a town, payment must be made by "a person exercising some authority," it is nowhere laid down that in order to extinguish the debt, payment must be made by the treasurer of the town.

"It is the payment of the lawful debts of the town by its own agents with the plaintiff's money which constitutes the cause of

action," is the language of the court in *Billings* v. *Monmouth.*

Selectmen are agents to manage the prudential affairs of their town. *Augusta* v. *Leadbetter*, 16 Maine, 47.

"The selectmen, treasurer, and every other person charged with the expenditure of the money of any town, shall . . make detailed written or printed reports of all their financial transactions, for and in behalf of the town," &c. R. S., c. 3, § 31.

In *Belfast Nat. Bank* v. *Stockton*, the court say : "If a person having no authority assumes to pay a municipal debt, the payment is a nullity at the will of the town. Its relations to its creditors cannot be affected by a stranger against its will."

The case at bar is not such a case. Selectmen are not strangers intermeddling with the affairs of the town. They are the general financial agents of their towns. The statute recognizes them as charged with the expenditure of money of their towns. It is their duty to see that the liabilities of their towns are promptly and honorably met. It is a common practice for selectmen to pay out money in behalf of their towns.

It is probable that every member of this honorable court, when at the bar, time and again, received pay for professional services rendered to towns from the hands of selectmen.

If a suit were being tried upon the order held by Mrs. Griffin against the town, would, or would not, a perfect defence be made out by the facts proved in this case, a payment to her of the full amount due, by the chairman of the board of selectmen of the town, with the knowledge and co-operation of the full board, with no recognition for six years thereafter on the part of the town, by any report or vote, by payment, or offer of payment, of interest or principal?

The Griffin order was presented to the town as a voucher for money paid by the selectmen, as early, at least, as 1878, for it was presented to the auditors chosen by the town in March, of that year, as a voucher for money disbursed by the selectmen.

The Lincoln order, now in suit, was also reported, and presented to the auditors. The town has merely refused to accept the auditors' report. It has taken no action in dissent of the payment of the Griffin order.

No recognition of the Griffin debt as an existing liability of the town since its payment by this plaintiff's money is attempted to be shown. The town denies its liability to this plaintiff whose money paid the Griffin debt; it has not denied that the Griffin debt is extinguished at the expense of this plaintiff.

"By non-action, after knowledge of the facts, there may be recognition by the principal of the agent's acts as his own." *Belfast Nat. Bank* v. *Stockton, ante.*

If in their reports to the town during the three years last past, of the financial standing of this town, the selectmen of Stockton have included, as a liability of the town, a debt of one thousand dollars and interest, due to Mrs. Griffin, the fact could have been easily shown.

"The corporation owes either the old debt or the new." *Belfast Bank* v. *Stockton.*

*A. P. Gould,* for the defendants, cited: *Dickinson* v. *Conway,* 12 Allen, 487; *Belfast Nat. Bank* v. *Stockton,* 72 Maine, 522; *Agawam Nat. Bank* v. *South Hadley,* 128 Mass. 503; *Kelley* v. *Lindsey,* 7 Gray, 287; *Railroad Nat. Bank* v. *Lowell,* 109 Mass. 214; *Parsons* v. *Monmouth,* 70 Maine, 264 and cases there cited; *Herzo* v. *San Francisco,* 33 Cal. 134; *Mayor* v. *Ray,* 19 Wall. 468; *Argenti* v. *San Francisco,* 16 Cal. 255; *Mc-Cracken* v. *San Francisco,* 16 Cal. 591; *Pimental* v. *San Francisco,* 21 Cal. 351; *French* v. *Auburn,* 62 Maine, 452; *Loker* v. *Brookline,* 13 Pick. 343; *Jones* v. *Lancaster,* 4 Pick. 149; *Haskell* v. *Knox,* 3 Maine, 445; *Morrell* v. *Dixfield,* 30 Maine, 157; *Moor* v. *Cornville,* 13 Maine, 293; *Ingalls* v. *Auburn,* 51 Maine, 352; *Field* v. *Towle,* 34 Maine, 405; Dillon Mun. Corp. 378, note; *Salsbury* v. *Philadelphia,* 44 Pa. St. 303; *Baltimore* v. *Poultney,* 25 Md. 18; *Seibrecht* v. *New Orleans,* 12 La. An. 496; 1 Daniel Neg. Inst. § 420; 2 Do. § 1530; *Sanborn* v. *Deerfield,* 2 N. H. 251; *Rich* v. *Errol,* 51 N. H. 350.

SYMONDS, J. In recent cases in this state it has been held, that when selectmen have acted without special authority in procuring loans of money for municipal purposes, if the lender would

recover in an action of assumpsit against the town the amount of the loans, he must prove not only that the money was received by the selectmen in their official capacity but also that it was applied by them to the use for which it was obtained, to meet and discharge existing municipal liabilities, *Billings* v. *Monmouth*, 72 Maine, 174 ; that towns themselves by the statutes organizing them are strictly limited in the exercise of the powers of borrowing and appropriating money, *Hooper* v. *Emery*, 14 Maine, 375 ; *Parsons* v. *Monmouth*, 70 Maine, 264 ; *Minot* v. *West Roxbury*, 112 Mass. 1 ; that selectmen do not possess by virtue of their office a general authority to hire money upon the credit of the town, *Bessey* v. *Unity*, 65 Maine, 347 ; that some action of the town, the body corporate, within the scope of its corporate powers, is required to confer prior authority to borrow money in its name; and if a liability is alleged on the ground that the plaintiff's loan was one the municipality had a legal right to procure and that, though its officers did not act with authority at the time, it has subsequently availed itself of the money loaned by accepting its application to the payment of municipal debts, it is for the plaintiff to prove the facts which support the allegation.

It was in the light of the principles already established by the cases which have been cited that the decision in *Bank* v. *Stockton*, 72 Maine, 522, was rendered, and the opinion in that case directed attention to the fact that "the extinguishment of legal claims against the town" by the use of the plaintiff's money — which had been referred to in *Billings* v. *Monmouth*, *supra*, as the very basis of his claim, "the vital question" — necessarily implied, in a case where the authority of the municipal officers alone was insufficient, the subsequent assent of the town. "Without corporate act or assent, or the agency of a person exercising some authority, there can be no such thing in a legal sense as the payment of a debt of a town." Where, then, the authority of the agent is wanting or is insufficient, a ratification by the principal, the town, must be proved. Otherwise, the application of the new loan to the old debt can at most effect an

assignment of it; it cannot discharge or extinguish it, and while that remains unpaid no new liability on the part of the town can take its place.

But, as to the evidence required to prove this ratification, it was held in *Bank* v. *Stockton*, that formal corporate action was not always necessary to show the assent of the town, without which in such a case there could be no completed payment of a municipal debt; that corporate inaction, failure to act after receiving official notice "that such a loan had been made, that their treasurer, or one of their selectmen, had employed it in paying a municipal debt, outstanding and overdue, and that the creditor had accepted the payment and given a formal release of his claim," might be sufficient evidence of such assent; that simply to refrain from formal municipal action would not enable the town "knowingly to retain the benefit of payments so made by its agents, with moneys hired in its name without authority, and thereby give effect, so far as to release itself from the old debt, to the acts of its officers assuming more than their legal powers, and at the same time withdraw itself from liability for moneys so hired and used."

This is only another statement of the familiar rule of the law of agency, that ratification may result from failure to disavow the unauthorized act of an agent. That it has a proper application to corporations, municipal and private, is generally recognized in the authorities. In regard to the former, it is stated by Dillon, (3 ed.) § 463, *et seq.* in the following terms : "A municipal corporation may ratify the unauthorized acts and contracts of its agents and officers, *which are within the corporate powers*, but not otherwise. Ratification may frequently be inferred from acquiescence after knowledge of all the material facts, or from acts inconsistent with any other supposition." As to private corporations the same rule is stated by Morawetz, §§ 74-84. "If the members of a corporation having notice of an unauthorized act, performed on their behalf by their regular agents, remain silent and take no steps to disaffirm the act, they may generally be charged with the consequences of the act on account of their acquiescence or ratification." Section 79. "In many

cases mere acquiescence or a failure to repudiate the act has been held sufficient." Section 74.

The authorities cited by the text writers are so numerous and uniform upon this subject, and the principle has been so recently declared in this state, that further discussion of it is not required. The following are a few of the cases in which it seems to be directly or indirectly recognized. 2 Kent's Com.* 291; *Peterson* v. *Mayor*, 17 N. Y. 453; *Hoyt* v. *Thompson*, 19 N. Y. 207, 218; *Fisher* v. *Sch. Dist.* 4 Cush. 494; *Keyser* v. *Sch. Dist.* 35 N. H. 477, 481; *Topsham* v. *Rogers*, 42 Vt. 189, 193; *Howe* v. *Keeler*, 27 Conn. 538; *Marsh* v. *Fulton Co.* 10 Wall. 676; *DeGrave* v. *Monmouth*, 4 C. & P. 111; *Hayden* v. *Madison*, 7 Greenl. 79; *Abbot* v. *Sch. Dist.* 7 Greenl. 118; *Jordan* v. *Sch. Dist.* 38 Maine, 164; *Argenti* v. *San Francisco*, 16 Cal. 256; *People* v. *Swift*, 31 Cal. 26.

The limitations upon the rule just stated, that formal municipal action is not always required as evidence of ratification by the town of an unauthorized act or contract, need not be considered in the present case; as, for instance, that the act or omission relied upon to show the ratification must be by the town itself or by some agent whose authority goes to that extent; that ratification, however proved, cannot make good an act for which prior authority could not legally have been given, one without the scope of the corporate powers or in excess of such powers in violation of law, or where, in certain instances, the officers in doing it violate or disregard the terms of a statute or a charter under which they are acting. There is nothing in this case to require a consideration of the limits of the application of the rule. There is no doubt the town is liable to the plaintiff for the amount of her loan, if it has either authorized or ratified its procurement.

It is not claimed that the selectmen, who hired the money of the plaintiff and with it paid — using that word, as it is convenient to do, to express the act, whether effective or not — the debt of the town to Mrs. Griffin, was authorized by vote of the town to hire money and use it to meet that municipal liability. The $1000, was borrowed of the plaintiff, July 19, 1876. At the

March meeting in that year the town had given the selectmen no authority to hire money to pay debts, but on the contrary had voted to raise $3000, for that purpose by taxation.

Only one question remains ; if the agent was without authority, did the town assent or ratify. Assuming, in accordance with the verdict of the jury, that the act of the selectmen was sufficient (if it had been authorized) to constitute a payment, was there a sub-sequent municipal assent to supply the defect of authority ? We think not.

The burden of proof is upon the plaintiff and the evidence does not sustain it. The special verdict of the jury apparently was not intended to go further in its effect than has just been indicated, namely, to find the fact of payment, whether author-ized, or not. If it was intended as a special finding that there was either prior authority or subsequent ratification of the act of payment, it would be against the weight of evidence, and in that event the agreement of counsel brings the case before the law court substantially upon report.

We find nothing in the evidence, which under the rule stated in *Bank* v. *Stockton*, can be regarded as a ratification on the part of the town, of the act of the selectmen in hiring money of the plaintiff and using it to take up the Griffin order. The money was never in the hands of the treasurer of the town, nor was the transaction entered upon his books. Neither the fact that money had been hired of the plaintiff and an order given to her, nor the payment of the Griffin order, appears to have been reported to the town by the selectmen or treasurer. The latter order was retained in the possession of the selectman who had the principal charge of this transaction, and he still controls it, having refused to deliver or to exhibit it to his successors in office. It was presented by him to the auditors, appointed in 1878 to examine the accounts of the town for the years 1876 and 1877, and their report which the town refused to accept in March and again in September, 1879, so far as appears, was the first notice the town received of this loan from the plaintiff. The town has not con-trolled the Griffin order since, and there has been no admission on its part that the payment of it with money borrowed without

authority was valid. The town has never authorized or ratified the pretended payment of it. It is still evidence of a debt due from the town, outstanding, not on the files of the present officers or under their control, never having been surrendered or cancelled by authority or consent of the town. In the way in which the affairs of the town of Stockton have been mismanaged, there seems to be more reason than there would otherwise be for its standing upon the letter of its rights. Who may be at present the lawful holder of the Griffin order, or what his rights may be, cannot be decided in this action. The acts of the selectmen in adjusting accounts among themselves at the close of the year, whatever they may have been, do not tend to show a ratification by the town, when proof that these proceedings were reported to the town is wanting. The same is true of other matters relied upon as proof of municipal assent, such as the retention of the Griffin order by Roberts, among the papers of the town while he continued in office as selectman, and the payment of interest on the plaintiff's order. The evidence fails to establish what is in fact and law a payment of the original debt to Mrs Griffin, and a substitution of the debt to the plaintiff in its stead, by which the defendants are bound against their will.

*Judgment for defendants.*

APPLETON, C. J., WALTON, DANFORTH, VIRGIN and PETERS, JJ., concurred.