## LUCIUS C. MORSE *vs.* INHABITANTS OF MONTVILLE.

## Waldo.    Opinion December 15, 1916.

*Municipal corporations.   Right to ratify unauthorized acts of agents or*
*servants.   Rule of ratification where the acts done and contracts entered*
*into by the agents and servants are in violation of Statute.   Duty*
*of vendor in selling goods to agents or servants of municipal*
*corporations.   Powers, duties and limitations of School Com-*
*mittee, under Public Laws of 1909, Chapter 88, Section 2.*

Action of assumpsit to recover the value of certain clapboards sold to the
defendant town to be used in the construction of a school building in the
defendant town.   During the progress of the building many questions
arose as to the legality of the acts of the school committee in locating the
school house; also questions arose as to acts of the Selectmen in regard
to the town meetings held to ratify the acts of the Selectmen and school
committee.

Held;

1.  As no plans or specifications were furnished by the State to be used in
the construction of said school house, the superintending school committee
had no authority to erect or construct a school house until they had made
plans and specifications for such proposed school building and had sub-
mitted them to and had them approved by the State Superintendent of
Public Schools, and the State Board of Health, under section 2, of chapter
88 of Public Laws of 1909.

2.  A municipal corporation may ratify the unauthorized acts and contracts
of its agents or officers, which acts or contracts are within the scope of the
corporate powers, but cannot ratify so as to make legal the acts of their
agents or officers, which acts were prohibited by statute.

3.  The act of the superintending school committee and superintendent of
schools in building the school house before the plans and specifications had
been approved, as required by law, being unauthorized, all parties who did
business with them in furnishing material or labor for the erection of
the school house dealt with them at their peril.   It was their duty, before
they furnished labor or materials on the credit of the town, to examine
and see if the parties with whom they were contracting were authorized
by law to make the contracts entered into.

Action of assumpsit on account annexed to recover the value of certain clapboards sold to defendant town.    Defendant filed plea of general issue.    Case was reported to Law Court upon agreed statement, the Law Court to determine all questions of law and fact and render judgment accordingly.    Judgment for defendant.

Case stated in opinion.

*Dunton & Morse,* for plaintiff.

*Ellery Bowden, and Walter A. Cowan,* for defendant.

SITTING:  SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

HALEY, J.  An action of assumpsit on account annexed, in which the plaintiff seeks to recover for clapboards, alleged to have been sold the defendant town in 1912 and used in the construction of a new school house in the Halldale district, so called, and is reported to this court on an agreed statement of facts, from which it appears that at the annual town meeting, held March 7, 1910, the town voted to build a school house at Halldale and appropriated $425 for that purpose.  At the March meeting, 1911, on the following article in the warrant, "To see where the town will vote to locate the Halldale school house," the town voted, "To leave the location of said school house with the Halldale district."    The superintending school committee of said town did not agree as to the location upon which to build the new school house, and on March 11, 1911, they voted, "To recommend the change of the location of the Halldale school house."  A special town meeting was called and held on April 3, 1911.  Article 2 of the warrant of said meeting was:  "To see if the town will vote to change the location of the school house in the Halldale district, so called, from its present location to the old location near the church."  And the town thereupon voted, "To change the present location to old location near the church."  The superintending school committee disregarded the vote of the town, and thereafterwards agreed to build the new school house by the side of the old Halldale school house, the spot selected for said building being within the limits of the location

then in use, and being the legal location for the Halldale school house. No building committee was appointed to build the school house, and the school committee, on or about October 28th, 1912, proceeded to erect a new school house on the lot on which the old school house was situated. The superintendent of schools of said town was the duly authorized agent of the school committee in procuring materials and building said school house, and the materials named in the plaintiff's account annexed were ordered on the credit of the town of Montville by said superintendent for said school house, and were used in its construction, the price charged is reasonable, as agreed upon between the superintendent and the plaintiff. On the 10th day of December, 1912, before said school house was completed, a protest in writing against the erection of the new school house on the location then in use by the town, and other than voted by the town as aforesaid, signed by thirty-five taxable inhabitants of said town, was given to the chairman of the board of selectmen of said town.. On the 11th day of December the selectmen of said Montville informed the superintendent of schools of said town that said protest had been given to the chairman of their board as aforesaid, and no bills for the construction of said school house had been approved or paid since the 11th day of December, 1912. But the superintendent, as agent of said school committee, continued the erection of said school house until the same was completed with the exception of benches, seats and chimney.

The superintending school committee, in the construction of said building, did not use plans and specifications prepared by the state superintendent of public schools, and the plans and specifications that were used for said building were not submitted by said superintending school committee to the State Superintendent of Public Schools, or the State board of health, prior to the commencement of the building of said school house, nor were the same ever approved by them. At the annual town meeting, held March 3, 1913, there was an article in the warrant, "To see what action the town will take in regard to the Halldale school house," and the town, by vote, instructed the selectmen to pay for the Halldale school house. April 4, 1913, a bill in equity praying for an injunc-

tion by citizens of Montville was brought against the inhabitants of said town, the selectmen, treasurer and school committee, and on the 19th day of May, 1913, a final decree was made, enjoining the officers of the town, and their successors, from further proceedings in the erection of the school house, and the paying out, or causing to be paid out, any money of said town for the erection of said school house or under any contract therefor. The plaintiff in this suit was not a party to the bill in equity and had no notice of said hearing.

It is necessary to consider but one branch of the defense. Section 2, chapter 88, Public Laws of 1909, reads: "Where the plans and specifications, prepared by the state superintendent, are not used, all superintending school committees of towns in which new school houses are to be erected, shall make suitable provision for the heating, lighting, ventilating and hygienic conditions of such building, and all plans and specifications for any such proposed school building shall be submitted to and approved by the Superintendent of Public Schools, and the State board of health, before the same shall be accepted by the superintending school committee, or school building committee of the town in which it is proposed to erect such building."

"Sec. 3. In case no special building committee has been chosen by the town, the superintending school committee shall have charge of the erection or construction of any school building, provided that said superintending school committee may, if they see fit, delegate such power and duty to the superintendent of schools."

As no plans or specifications were furnished by the State to be used in the construction of said school house, the superintending school committee had no authority to erect or construct a school house until they had made plans and specifications for such proposed school building, and had submitted them to and had them approved by the State Superintendent of Public Schools, and the State Board of Health. *Lunn in Equity* v. *City of Auburn,* 110 Maine, 241. The superintending school committee and superintendent of schools had no authority from the town to build a school house, except as they proceeded according to law, and as the erection of the school house by them was not according to law, but

in violation of the statute, they had no authority to bind the town for building material used by them in their illegal act; for all persons furnishing materials to town or city officers must take notice at their peril of the extent of the authority of such officers. *Goodrich* v. *Waterville,* 88 Maine, 39. The plaintiff contends that, the vote of the town meeting of March 3, 1913, at which it was voted to instruct the selectmen to pay for the Halldale school house, is a ratification of the acts of the superintending school committee and superintendent of schools, made by the town with the full knowledge of all the facts and therefore binding upon the town, citing sec. 797, Dillon's Municipal Corporations 3d ed.: "A municipal corporation may ratify the unauthorized acts and contracts of it's agents or officers which are within the scope of the corporate powers, but not otherwise." This rule does not aid the plaintiff, for, although the town might ratify the unauthorized acts and contracts of its agents or officers which were within the scope of the corporate powers, they could not ratify so as to make legal the acts of their agents or officers in doing acts prohibited by the statute. The statute of 1909, above referred to, prohibits the building or erection of a school building until the plans and specifications have been approved by the State Superintendent and by the State Board of Health, unless plans and specifications prepared by the State Superintendent are used. If the town could ratify, by a vote of a town meeting, the acts of their agent in violation of the statute, after such acts had been performed, then it would lay in the power of any town to nullify the provisions of the statute requiring plans to be approved as specified by section 2, chapter 38, Laws of 1909. Many of the acts of agents of a municipality may be ratified, but not acts that are done in violation of a statute, as the building of the school house in question was. The act of the superintending school committee and superintendent of schools in building the school house before the plans and specifications had been approved, as required by law, being unauthorized, all parties who did business with them in furnishing material or labor for the erection of the school house, dealt with them at their peril. It was their duty, before they furnished labor or materials on the credit of the town, to examine and see if the parties with whom they were contracting,

were authorized by law to make the contracts.   If they had done so in this case the plaintiffs would have discovered that the superintendent of schools had no right to order the goods upon the credit of the town.

*Judgment for defendant.*