SCHOOL ADMINISTRATIVE DISTRICT #3
*vs.*
MAINE SCHOOL DISTRICT COMMISSION
AND
WARREN G. HILL, J. WESLEY OLIVER,
MARK SHIBLES AND CLIFFORD ROSMOND
IN THEIR CAPACITY AS MEMBERS OF THE
MAINE SCHOOL DISTRICT COMMISSION.

Kennebec.    Opinion, November 20, 1962.

*George A. Wathen,* for the Plaintiff.

*Richard A. Foley, Asst. Atty. General,*
(for the Commission)

*Bartolo M. Siciliano* (for the Intervenors)
for the Defendants.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, DUBORD, J., did not sit.

SIDDALL, J. On report. This is a complaint for declaratory relief brought by School Administrative District #3, hereafter called the District, against the Maine School District Commission, hereafter called the Commission, and the members of said Commission. By agreement, Alfred Ellis and nine other taxable inhabitants of the town of Brooks, one of the towns constituting the District, and also the Inhabitants of the Town of Brooks, were permitted to intervene as parties defendant.

It was stipulated that the action is reported to the Supreme Judicial Court, sitting as the Law Court, upon the complaint, answers, exhibits, and upon so much of the evidence adduced before the presiding justice as is legally admissible, for such final decision as the rights of the parties require. The stipulated issues presented for decision are summarized as follows:

1. Did the District have authority to initiate a complaint for declaratory relief on the grounds set forth in the complaint, and can the act of instituting the action in this case be ratified by the directors of the District?

2. Is the note dated September 14, 1961, issued to Alonzo J. Harriman, Inc. by the District outstanding indebtedness for capital outlay purposes as defined in Sections 111-P and 237-H, Chapter 41, R. S., 1954, as amended?

3. Was the vote of the special town meeting held at Brooks on March 15, 1962, effective to initiate dissolution proceedings of said District?

The first question to be considered is whether the District had authority to institute a complaint for declaratory relief on the grounds set forth in the complaint. The defendants concede in argument that the District had the power to sue or to be sued. The Town of Brooks has intervened as a party defendant. Obviously there is a bona fide controversy over the question of whether the Town of Brooks can legally petition for dissolution of the District. This question depends upon whether at the time the proceedings were initiated to dissolve the District there was outstanding indebtedness of the District, defined in Sec. 111-P as bonds or notes for capital outlay purposes issued by the directors of the District pursuant to approval thereof in a district meeting of the District. The controversy is of sufficient moment to justify a determination thereof by this court. This proceeding will terminate the controversy and remove the uncertainty which now exists in regard to whether the Town of Brooks can legally initiate proceedings to dissolve the District. We believe that the Declaratory Judgment Act was designed to provide a suitable remedy in cases such as this. Apparently this action was instituted upon order of a committee of the directors of the District and by the secretary of the directors. It was stipulated that such action on the part of the committee and secretary has been ratified by the directors of the District. The directors, having authority to start this action, may later ratify the previous unauthorized act in instituting the action.

The next question is whether the note dated September 14, 1961 constitutes outstanding indebtedness for capital outlay purposes as defined in R. S., 1954, Chap. 41, Secs. 111-P and 237-H, as amended. The determination of this question involves two issues, (1) whether the employment

of the architect previous to the authorization by the Inhabitants of the District of a bond issue to finance the construction of the schoolhouse could be legally ratified by the directors, and if so, was it ratified, (2) whether parol evidence was admissible to show that the vote taken at the meeting of September 12, 1961 authorized the issuance of a note in anticipation of the sale of the bonds.

The applicable provisions of the statutes are as follows:

Sec. 111-K. "When an issue of capital outlay bonds or notes has been properly authorized, the board of school directors prior to the issuance of said bonds or notes may borrow in anticipation of their sale by issuing temporary notes and renewal notes, the total face amount of which does not exceed at any one time outstanding the authorized amount of the capital outlay bonds or notes."

This provision became effective Sept. 12, 1959.

Sec. 237-H. " 'Capital outlay purposes' as the term is used in this chapter shall mean . . . cost of architectural, engineering and other legal expenses, plans, specifications, estimates of costs, . . . . "

Sec. 111-P. "No such vote on a petition for dissolution shall be permitted while such school administrative district shall have outstanding indebtedness. Outstanding indebtedness is defined as bonds or notes for capital outlay purposes issued by the school directors pursuant to approval thereof in a district meeting of such school administrative district, . . . . "

Sec. 111-P became effective May 5, 1961.

It is here noted that by legislation effective on May 5, 1961, a participating municipality was authorized to peti-

tion for the dissolution of a district, but any dissolution was subject to the requirements of the above quoted provision contained in Sec. 111-P.

During the month of March 1961, the Inhabitants of the District authorized the issuance and sale of bonds and notes in the amount of $730,000.00 for capital outlay purposes to finance the construction and equipping of a combined primary and secondary school.

At a meeting of the directors of the District held on May 13, 1961, it was voted to issue a note to the architect, Alonzo J. Harriman, Inc. in the sum of $8,850.00 in anticipation of the sale of bonds. A note of the District, executed by its Treasurer and countersigned by the Chairman of the Board of Directors of the District was given in accordance with such vote. Subsequent to the date of this meeting the architect released its note, apparently to give one of the towns in the District an opportunity to initiate action to dissolve the District.

At a district meeting of the Inhabitants of the District a majority voted not to dissolve the District. Thereafter, on September 12, 1961, the directors of the District took the following vote: "It was moved (Mr. Couturier) and seconded (Mr. Keller) to issue a note to Mr. Alonzo Harriman for $8,850. This money is owed to him. Voted 8 for with 3 abstaining." A note was then given by the District signed by the Treasurer and countersigned by the Chairman of the Board of Directors. The note given was in the form of a note in anticipation of the bond issue and was made payable to Alonzo J. Harriman, Inc., on or before September 1, 1962.

At a special town meeting of the Town of Brooks held on March 15, 1962, the town voted to petition to dissolve the District.

The record discloses that the District was organized on

September 23, 1958. The directors of the District were elected on the same date. Over three years later, during the month of March, 1961, a bond issue to finance the construction of the school was authorized by the inhabitants of the District. Although the exact vote of the inhabitants of the District is not set forth in the record, no claim is made that the construction of the schoolhouse was authorized prior to March, 1961, and it is obvious that the inhabitants during that month voted to build the schoolhouse and at the same time authorized the bond issue to finance its construction. The architect was employed by the directors shortly after the organization of the District. Substantial services were performed by it prior to the month of March, 1961, and the bill rendered by it for which the note was given included services to May 5, 1961. The directors of the District had no authority to employ an architect prior to the vote of the District to authorize the bond issue. After that vote the directors undoubtedly, as a necessary incident to the construction of the schoolhouse, had authority to contract for architectural services to be performed. A question arises in regard to the authority of the directors to ratify an unauthorized contract, entered into on behalf of the District before the bond issue was authorized, for services performed before the authorization of the bond issue.

By virtue of R. S., Chap. 41, Sec. 111-K the District was declared to be a quasi-municipal corporation within the meaning of Chap. 90A, Sec. 23. This section provides that the personal property of the residents and the real estate within the boundaries of a quasi-municipal corporation may be taken to pay any debt due from the body corporate.

Our court has been zealous in protecting the rights of property owners from seizure for the debts of the municipality. On numerous occasions the rule has been stated that a person dealing with officers or agents of a municipality does so at his peril, and that it is his duty to determine

whether the parties with whom he is contracting were authorized to make the contract. *Michaud* v. *St. Francis,* 127 Me. 255, 259; *Stewart* v. *York,* 117 Me. 385, 387; *Van Buren Light and Power Co.* v. *Inhabitants of Van Buren,* 116 Me. 119, 124; *Morse* v. *Inhabitants of Montville,* 115 Me. 454, 457.

The term *"ultra vires"* has been given many different meanings. Strictly speaking an *ultra vires* contract is a contract which is beyond the power of a municipal corporation to make. Such a contract cannot be ratified. *Portland Tractor Co.* v. *Inhabitants of Anson,* 134 Me. 329, 332; *Williams* v. *Inhabitants of Vinalhaven,* 123 Me. 505, 508; *Van Buren Light and Power Co.* v. *Inhabitants of Van Buren,* 118 Me. 458, 462.

An *ultra vires* contract is to be distinguished from one which is within the power of a municipal corporation to make but which has been made irregularly.

Our court has cited with approval the following quotation from Dillon's Municipal Corporations (3rd Ed.) Sec. 463 and 797 as follows:

> "A municipal corporation may ratify the unauthorized acts and contracts of its agents and officers, *which are within the scope of the corporate powers, but not otherwise."* *Morse v. Inhabitants of Montville,* supra, at p. 458. *Lincoln v. Inhabitants of Stockton,* 75 Me. 141, 146.

This rule is, however, subject to certain limitations. In *Lincoln* v. *Stockton, supra,* the court said:

> "The limitations upon the rule just stated, that formal municipal action is not always required as evidence of ratification by the town of an unauthorized act or contract, need not be considered in the present case; as, for instance, that the act or omission relied upon to show the ratification must be by the town itself or by some agent whose authority

goes to that extent; that ratification, however proved, cannot make good an act for which prior authority could not legally have been given, one without the scope of the corporate powers or in excess of such powers in violation of law, or where, in certain instances, the officers in doing it violate or disregard the terms of a statute or a charter under which they are acting. There is nothing in this case to require a consideration of the limits of the application of the rule. There is no doubt the town is liable to the plaintiff for the amount of her loan, if it has either authorized or ratified its procurement."

And in *Power Company* v. *Van Buren, supra,* the court said:

"It is urged by the plaintiff that the defendant is liable because the supposed contract was ratified by the inhabitants of the town, and it is a rule of law 'that a municipal corporation may ratify the unauthorized acts and contracts of it's agents and officers, which are within the corporate powers, but not otherwise.' But there is no admissible testimony in the record that shows that the unauthorized acts of the so called committee or agents in entering into the contract was an act of the agents or officers of the town, and the admissible testimony fails to show the so called committee or agents were ever authorized to enter into any contract for the town. They had no authority from and were not agents or a committee of the town, and the above rule as to ratification does not apply."

The law is well settled that a committee, which has been given authority to make a certain contract on behalf of a municipal corporation, may ratify such a contract when made by a minority of its members. *Hanson* v. *Inhabitants of Dexter,* 36 Me. 516. The facts in the instant case, however, differ from those in the *Hanson* case. There, the committee, at the time of the unauthorized action of a minority of its members, had authority to make the contract. The committee, having authority in the first instance to make

the unauthorized contract, could give it validity by the process of ratification. Here, the directors, at the time the contract was made in the first instance, had no authority to bind the District by making such a contract. No case has been cited which deals with the power of officers or boards of a municipal corporation to ratify an unauthorized contract made under such circumstances. The plaintiff in its brief cited several cases in support of its position that the contract had been ratified. These cases, however, involved contracts which were within the scope of the corporate authority and in which the ratification was made by the voters of the municipal corporation or by officers having original authority to make the contract. The plaintiff also cited 78 C. J. S. Schools and School Districts, Sec. 302. In this section we find the following statement:

> "However, as a general rule, in order to constitute a valid ratification, there must be some affirmative corporate action with a full knowledge of the facts by voters or boards or officers having original authority in the matter."

This general rule has been stated in numerous cases, but we find no case among them having facts similar to those in the instant case. In *Yaeger* v. *Giguerre* (Minn.), 23 N. W. (2nd) 23, suit was brought to enjoin the payment of further compensation for the services of a police officer. The police officer, before taking a leave of absence, obtained approval of the chief of police but failed to procure the approval of the city Civil Service Commission as required by law. The claim was made that the leave of absence was invalid and that the police officer had forfeited his civil service status. The court said:

> "There can be no question that the commission had the authority in the first instance to approve the leave as granted by the chief of police. It is a general rule that whatever acts public officials may do or ·authorize to be done in the first instance may

subsequently be adopted or ratified by them with the same effect as though properly done under previous authority. * * * * * Applying this rule to the instant case, it is clear that the civil service commission by its belated action ratified the granting of a leave of absence with the same effect as if originally authorized."

"It is elementary of course that a contract, to be binding upon a municipal corporation, must be executed by the department, board committee, council, officer or agent vested by law with power to make it. 3 McQuillin Municipal Corporations, 2d Ed., Sec. 1266. And the authority must be exercised by the proper authorities in their official capacity and in the manner provided by law. 3 McQuillin Municipal Corporations, 2d Ed., Sec. 1279; *Paul v. Seattle,* 40 Wash. 294, 82 P. 601; *Jones v. Centralia,* 157 Wash. 194, 289 P. 3. Likewise, ratification of a contract may be effected only by the officer or body originally empowered to make it. 3 McQuillin Municipal Corporations, 2nd Ed., Sec. 1360; *Jones v. Centralia,* supra; *Marsh v. Fulton County,* 10 Wall. 676, 77 U. S. 676, 19 L. Ed. 1040." *Hailey* v. *King County,* 149 P. 2d. 823, 824 (Wash.).

"A contract may be ratified only by the officer or board authorized to make it in the first instance . . ." McQuillin on Municipal Corporations, Sec. 29.108.

In the strict sense of the term the contract for architectural services was not *ultra vires* as to the inhabitants of the District. Such a contract was not beyond the power of the District to authorize. The power to authorize any contract for the construction of the school building was originally in the voters of the District. They exercised that power during the month of March, 1961, by authorizing the construction of the school building and the bond issue to finance such construction as provided in Sec. 111-T. The directors were thereby, for the first time, given authority

to make contracts for the construction of the building and to borrow in anticipation of the sale of bonds by issuing temporary notes. There is nothing in the record to indicate that the vote of the inhabitants of the District was in any sense a ratification of previously unauthorized acts of the directors. We are not called upon to determine whether ratification under any circumstances could be made by the District, limited as its powers are under the legislation which created it. The contract made with the architect was not merely an irregular contract, defectively executed, or entered into by a minority of the members of a board or committee at a time when the board or committee had authority to make the contract. The directors, at the time, were devoid of authority to bind the District by contracting for architectural services. They had no authority to make the contract in the first instance, and, under the facts in this case, they cannot ratify their own unauthorized act. If the rule were otherwise, boards or committees might be tempted in some instances to ratify an ill-advised or improvident contract entered into by them. The note, being unauthorized, did not constitute an outstanding indebtedness for capital outlay purposes as defined in the statute.

There is another reason why the note cannot be considered as one given for capital outlay purposes. Assuming that parol evidence was admissible to explain any omission in the records of the meeting of the directors not properly recorded, the record, supplemented by parol testimony falls short of showing that the note given was properly authorized by the directors. The parol evidence offered may be sufficient to indicate that the note purported to be given as a temporary loan in anticipation of the sale of bonds. However, neither the record nor the supplemental testimony indicate the terms of the note to be given, nor the date of its maturity. A properly authorized and executed note for capital outlay purposes, given in anticipation of the sale of bonds, becomes an obligation of the District. The in-

habitants and property owners of the District have the right to expect that the authorization for the execution of the note will be clearly given. The fixing of the terms of the note, including the date of maturity, is the responsibility of the directors and not that of those executing the note. If the officers executing the note could arbitrarily fix the date of payment on September 1, 1962, they could make the instrument payable on any date. We find that the record, together with the oral testimony was insufficient to authorize the execution of the note given in this case. Consequently, it cannot constitute a note for capital outlay purposes, given in anticipation of the sale of bonds.

The second issue in the case is whether the vote of the special town meeting held at Brooks on March 15, 1962, was effective to initiate dissolution proceedings of School Administrative District No. 3. Sec. 111-P provides that after residents of a participating municipality have voted on a petition for dissolution, notices shall be mailed to the secretaries of the District and of the Commission.

This section provides also that if the Commission finds that 2/3 of the voters voting on said petition have voted in the affirmative, the Commission shall make a finding of fact to that effect and record it with its records. The Commission then proceeds in accordance with the steps outlined in Sec. 111-P. The record does not contain a copy of the vote taken by the Town of Brooks. The plaintiff alleged in its complaint that the directors of the District, and the Commission, received notices from the deputy clerk of the Town of Brooks on March 15 and March 19, 1962, respectively, that at a special town meeting held on March 15, 1962, the town had voted to petition for dissolution of the District. There is no claim on the part of the plaintiff that the affirmative vote at the town meeting was less than the requisite two-thirds, or that the vote was otherwise insufficient in any respect. Its only contention on this issue is that the

vote taken was ineffective because there was outstanding indebtedness of the District for capital outlay purposes at the time of the meeting. This court having decided against the plaintiff's contention in this respect, it follows as a necessary consequence that the vote of the Town of Brooks was effective to initiate proceedings to dissolve the District upon a finding by the Commission that 2/3 of the voters voting on the petition for dissolution had voted in the affirmative.

A decree will be entered adjudging that the note dated September 14, 1961 to Alonzo J. Harriman, Inc. did not constitute outstanding indebtedness of the District for capital outlay purposes as defined in Sections 111-P and 237-H, Chapter 41, R. S., 1954, as amended; that the vote of the special town meeting held at Brooks on March 15, 1962, was effective to initiate dissolution proceedings of said District, subject to a determination by the Commission that 2/3 of the voters of the Town of Brooks voting on the petition for dissolution have voted in the affirmative; that the temporary injunction be dissolved, and that the motion for a permanent injunction be denied.

The entry will be

*Remanded to the justice below for a decree in accordance with this opinion.*