2007 ME 101

**James P. MASON et al.**

v.

**CITY OF AUGUSTA et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: May 2, 2007.

Decided: Aug. 2, 2007.

James P. Mason, William P. Johnson, Augusta, for plaintiffs.

Stephen E.F. Langsdorf, Esq., Preti Flaherty Beliveau & Pachios LLP, (for City of Augusta), Jotham D. Pierce Jr. Esq., Pierce Atwood LLP, Portland, (for Cony, LLC), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

SAUFLEY, C.J.

[¶ 1] James P. Mason and William P. Johnson appeal from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) dismissing their complaint for declaratory and injunctive relief, in which they alleged that the City of Augusta's purchase and sale agreement with Cony, LLC, for the sale of property occupied by Cony High School was void and unenforceable. Reviewing the stipulated facts, we agree with the court that Mason and Johnson have failed to establish any legal impediment to the City's entry into the conditional purchase and sale agreement. Because we disagree, however, with the court's conclusion that it lacked subject matter jurisdiction, we vacate the judgment and remand the matter for the court to enter judgment in favor of the City.

## I. BACKGROUND

[¶ 2] The following facts are not in dispute. In June 2004, the City of Augusta and Cony, LLC, executed a purchase and sale agreement. The agreement provided for a purchase price of $1.5 million for "approximately 6 acres" of land to include the Cony High School building but not the adjacent Flat Iron building. The agreement contained, as an attachment, a diagram roughly depicting the proposed property lines. The entire agreement was conditioned on the City's compliance with all requirements for the closure of Cony High School on the parcel in accordance with 20–A M.R.S. §§ 4101–4104 (chapter 202) (2006). The agreement provided that, if the City was unable to close the school pursuant to chapter 202, the City would return the deposit to the LLC and all other obligations would cease. The agreement also afforded the City the right to appraise the property and provided several options if the appraisal indicated a fair market value of 105% or more of the contracted purchase price, including the adjustment of the purchase price; the procurement of a second appraisal to be averaged with the first; and the option of the City to reject the original terms if the LLC refused to adjust the price, at which point the deposit would be returned and the contract terminated.

[¶ 3] The dispute before us arises from the events that led up to the execution of this purchase and sale agreement. After Joseph F. Boulos expressed interest in purchasing and redeveloping the former Cony High School property in May 2003, the city manager authorized a survey of the Cony High School property in December at a cost of $4,999 without requesting bids. The city manager also issued a request for proposals for appraisal services. Because none of the four candidates that submitted proposals expressed an ability to complete an appraisal before the City's deadline, however, no appraisal was done.

[¶ 4] At a meeting of the City Council on December 22, 2003, the Council reviewed a draft request for proposals and authorized the city manager to solicit proposals for redevelopment of the property. Mason and Johnson do not contest that this meeting was properly publicized.

[¶ 5] An ad hoc committee composed of three City Council members was directed to screen the proposals. There is no record of this ad hoc committee's formal charge or duties, and the public was not provided notice of its meetings.

[¶ 6] The request for proposals, which was published in three newspapers, stated:

> The City of Augusta is inviting developers to submit proposals for the redevelopment of the newer portion of Cony High School. The facility sits on approximately 6–acres of land and is located in the heart of the City's eastside. The historic Cony High School building known as the 'Flat Iron' is not part of this RFP. The City will accept proposals that include reasonable reuse concepts that are compatible with the area (e.g. residential, office, retail). For a detailed package, please contact Michael A. Duguay at (207)626–2336. Proposals will be due in the Office of the City Manager, City of Augusta, 16 Cony Street, Augusta, Maine 04330 by 4:30 p.m., Wednesday, January 28, 2004.

(Emphasis in original.)

[¶ 7] Joseph F. Boulos and Partners was the only entity to submit a redevelopment proposal. The proposal was made on behalf of "Joseph F. Boulos and Partners and/or designee." The proposal provided that "[a] single-purpose entity [would] be established for the purposes of this development, the principals of which [would] include Joseph F. Boulos, Gregory W.

Boulos, Daniel M. Greenstein, and C. Anthony McDonald." Cony, LLC, was the entity ultimately established for this purpose.

[¶ 8] On March 1, 2004, the City Council authorized the city manager to execute a purchase and sale agreement with Boulos for roughly six acres of the Cony High School site,

> consistent with the terms and conditions contained in a Request for Proposals issued by the City of Augusta, with appropriate additional terms and conditions that the City Manager, upon consultation with the Mayor and Council, shall deem proper, and with the understanding that no final transfer of ownership of said property shall occur until all reviews and approvals required of the Augusta Planning Board and Augusta City Council related to site development have been accomplished.

Mason and Johnson do not contest that the City Council adequately publicized the regular public meeting at which the Council granted the city manager the authority to contract with Boulos.

[¶ 9] Only after executing the purchase and sale agreement did Cony, LLC, file its articles of organization, in July 2004. Cony, LLC, and the City executed amendments to the purchase and sale agreement on July 12, 2004, and September 27, 2004.

[¶ 10] In August 2004, without employing a bidding process, the City contracted for planning and design services related to the development of the Cony High School site. The planning and design contractor agreed to work for a maximum of twenty hours per month at a rate of $100 per hour.

[¶ 11] James P. Mason, William P. Johnson, and Helen Nasberg—citizens and taxpayers in the City—filed a complaint for injunctive and declaratory relief against the City, the Augusta Board of Education, and Cony, LLC, in the Superior Court in May 2005, before any of the statutory school closing requirements could be met, and before any property had been transferred. They sought a judgment declaring the purchase and sale agreement null and void, and enjoining the enforcement of the agreement because the City failed to (1) meet statutory school closing requirements; (2) obtain an appraisal; (3) seek bids competitively for professional surveying and consultant services; (4) describe the property in the City Council's order to request proposals; (5) give public notice of the ad hoc committee's meetings; (6) provide adequate time for interested parties to participate in the request for proposals process; or (7) notify the Augusta Conservation Commission of the potential sale. They also alleged that the City favored the LLC with preferential treatment, and they moved for a preliminary injunction.

[¶ 12] The LLC and the City, of which the Board of Education is a subdivision, filed answers and affirmative defenses, including the defense of failure to state a claim upon which relief may be granted. After conferring with counsel, the court ordered that the parties file a stipulated record by August 1, 2005. Mason, Johnson, and Nasberg filed an extensive statement of stipulated facts, after which Cony, LLC, and the City jointly filed a statement of facts that was consistent with most of the facts reported by Mason, Johnson, and Nasberg. The City successfully moved to supplement the record to include affidavits to establish its asserted facts.

[¶ 13] After hearing oral arguments in November 2005, the court entered a judgment on May 26, 2006, denying the motion for a preliminary injunction and dismissing the complaint "for lack of jurisdiction over the subject matter." The court reasoned that the contract was an option con-

ditioned upon events that had not yet been completed. Specifically, the new school was not yet complete, and the City had not yet obtained control over the premises. The court concluded that no legal authority requires an appraisal, a specific written legal description of the property, a competitive bid for survey or planning consultant services, or review by the Conservation Commission to establish a valid contract. The court also concluded that there was no evidence that the ad hoc committee's conduct had not been fully disclosed and dealt with by the City Council as it met its obligations in reviewing the contract and authorizing the city manager to execute it. Ultimately, the court concluded that, "[i]n its present form, the contract is simply a promise by two parties to perform if certain events take place in the future. There has been no harm."

[¶ 14] The court did note, however, that as the City goes forward, 20-A M.R.S. § 4102(4)(B) will provide an opportunity for citizens to petition the Board of Education to challenge the school closing, and the Board will still be required to cast the necessary votes in public proceedings. The court did not find any legal defects that would void the contract, however, and stated:

> The court must separate the legal questions from the political question. A determination by this court that the City has not violated a legal condition in entering into this contract does not resolve any political questions that might arise from the procedure. In accordance with our Constitution, this court will not and cannot pass judgment on political issues.

> The entry will be:

> Plaintiff's complaint is DISMISSED for lack of jurisdiction over the subject matter; motion for preliminary injunction is DENIED.

Mason and Johnson timely appealed from this judgment; Nasberg did not join in the appeal.

## II. DISCUSSION

### A. Dismissal for Lack of Subject Matter Jurisdiction

[¶ 15] We first review the propriety of the court's dismissal of the complaint for lack of subject matter jurisdiction. A court lacks subject matter jurisdiction when the case is of a type that falls outside a court's adjudicatory authority. *See Landmark Realty v. Leasure*, 2004 ME 85, ¶ 7, 853 A.2d 749, 750. Here, the court concluded that Mason and Johnson had raised political issues that were outside the court's realm of authority. Although we do not disagree that Mason and Johnson's underlying motivations may have been political in nature, a claim that a contract is void is a claim that a court has jurisdiction to decide. *See, e.g., Stenzel v. Dell, Inc.*, 2005 ME 37, ¶ 26, 870 A.2d 133, 143; *A.L. Brown Constr. Co. v. McGuire*, 495 A.2d 794, 796–98 (Me.1985). Accordingly, the court erred in dismissing the complaint. Because the dismissal was in error, we next review the stipulated facts to determine whether Mason and Johnson could succeed on the merits of their complaint.

### B. Challenges to the Validity of the Contract

[¶ 16] Mason and Johnson contend that the purchase and sale agreement is void because the City failed to comply with statutes, ordinances, the City Charter, and a City Order; property dedicated to a specific public purpose may be held only for such a public purpose; the ad hoc committee lacked a formal charge and acted outside of public proceedings; the developer received preferential treatment;

and the City contracted with an entity other than the entity authorized by the City Council.

[¶ 17] The LLC and the City argue that the City was not required to perform all steps necessary to close the school before entering into a conditional purchase and sale agreement. According to the LLC and the City, in the event those conditions cannot be fulfilled, the transfer will not proceed, and the agreement accounts for this possibility. The LLC and the City contend that the City Charter and Code of Ordinances do not impose any restrictions on the manner of contracting for the sale of City property. They further contend that Mason and Johnson failed to preserve their argument that the property was devoted to a public use, and that this argument relies on the *cy pres* doctrine, which is inapplicable. Finally, the LLC and the City argue that Mason and Johnson have failed to establish any procedural errors that would invalidate the conditional purchase and sale agreement.[1]

▇▇▇ [¶ 18] Because the facts are stipulated, we review de novo the legal issues presented to the Superior Court. *See Christian Fellowship & Renewal Ctr. v. Town of Limington,* 2006 ME 44, ¶ 9, 896 A.2d 287, 291. Any issue not raised to the Superior Court is not preserved for appellate review. *Bickford v. Onslow Mem'l Hosp. Found., Inc.,* 2004 ME 111, ¶¶ 7–8, 855 A.2d 1150, 1154. Examining each argument Mason and Johnson have raised on appeal, the relevant inquiry is whether any defect they purport to identify invalidates the contract between the City and the LLC.

### 1. Compliance with 20-A M.R.S. § 4102

▇▇ [¶ 19] Section 4102 prescribes the conditions that must exist before a school administrative unit may close a school building. 20-A M.R.S. § 4102. Because the school closure was only anticipated at the time the City and the LLC executed the contract, these requirements had not yet become relevant. There is nothing in this statute that prohibits a city from entering into a purchase and sale agreement in anticipation of a school closure, conditioned upon compliance with the statute. *See Murray v. Inhabitants of Lincolnville,* 462 A.2d 40, 42–43 (Me.1983).

### 2. Compliance with the City Charter

[¶ 20] The City Charter outlines the powers and duties of the City Council:

> The administration of all the fiscal, prudential and municipal affairs of the city, except as otherwise provided by this Charter, shall be and are vested in one (1) body called the city council. All members of the council shall be qualified voters of the city, and shall be sworn in the manner hereinafter prescribed. The city council shall exercise its powers in the manner hereinafter provided.

Augusta, Me., City Charter, art. II, § 4 (2006). Mason and Johnson contend that this provision was violated because, without an appraisal or a full and accurate legal description of the property, the City Council could not make accurate determi-

---

1. In Mason and Johnson's reply brief, they contend that the purchase and sale agreement violated additional ordinances and an additional provision of the City's charter, that the purchase and sale agreement was never ratified by the City Council through a public vote, that there is no evidence that the City voted to approve the final text of the request for pro-

posals, and that the City has acted to minimize citizens' involvement in the disposition of public property. We do not consider these issues, however, because they were raised for the first time in Mason and Johnson's reply brief. *See* M.R.App. P. 9(c); *Bisco v. S.D. Warren Co.,* 2006 ME 117, ¶ 7 n. 4, 908 A.2d 625, 627.

nations of the value and extent of the land being sold.

[¶ 21] It is unclear how the lack of an appraisal or a legal description offends section 4 of article II, which provides a general grant of authority to the City Council. Here, the City Council acted within the scope of its duties to administer the fiscal, prudential, and municipal affairs of the City pursuant to the City Charter when it approved the execution of a conditional contract that included a general description of the property to be sold and a process for potentially adjusting the purchase price or terminating the contract based on a future appraisal.

### 3. Compliance with City Ordinances

[¶ 22] Section 2–293 of the City's Code of Ordinances provides a process for competitive sealed bidding for certain City contracts: "All contracts of the city for purchases of supplies or construction at or in excess of three thousand dollars ($3,000.00) and for the purchase of services at or in excess of three thousand dollars ($3,000.00) shall be awarded by competitive sealed bidding except as otherwise provided in this article." Augusta, Me., Code of Ordinances § 2–293(a) (2006). When competitive sealed bidding is required, "[t]he City Council shall be notified at a regular Council meeting of all pending purchases of supplies, construction and/or purchase of services." Augusta, Me., Code of Ordinances § 2–306 (2006).

[¶ 23] The City complied with these Ordinances in the process of obtaining the bids for the redevelopment of the Cony property. That other purchased services might have been obtained without competitive bidding does not affect the validity of the purchase and sale agreement with the LLC. Even if the city manager executed the contracts for services with the surveyor or the planning and design consultant

without competitive sealed bidding, there are no facts in the record demonstrating any link between those services and the execution or terms of the purchase and sale agreement. Although ordinance violations might affect the validity of the service contracts themselves, such violations are not grounds for invalidating the purchase and sale agreement at issue here.

### 4. Compliance with the City Council Order Regarding the Conservation Commission

[¶ 24] City Council Order 466, dated May 2, 1994, directed that City-owned land be examined by the Conservation Commission:

> WHEREAS, the Augusta City Council has indicated on numerous occasions a desire to have the Augusta Conservation Commission examine and make recommendations regarding any and all land owned by the municipality which may be offered for sale,
>
> NOW, THEREFORE BE IT ORDERED, That all city owned land be directed to the Conservation Commission for their examination and recommendations.
>
> BE IT FURTHER ORDERED, *that in the event the City Manager deems it necessary that a certain parcel of property should take precedence that the Conservation Commission be notified to that effect and that said property be brought forward to top of the list for examination and recommendation by the Conservation Commission within ten (10) business days.*

(Emphasis in original.)

[¶ 25] This order did not require the Conservation Commission to examine land and make recommendations on an ongoing basis. Rather, the City Council ordered the Conservation Commission to

review a list of the property then owned by the City and make recommendations to the Council, with priority given to any properties identified by the city manager. This order directing the Conservation Commission to take certain actions in 1994 cannot be understood to have the same ongoing effect as a properly adopted municipal ordinance. *See* 30–A M.R.S. §§ 3001–3012 (2006).[2] The order does not state that it is a standing order, and there is no reason to assume that the order has ongoing effect. Accordingly, the purchase and sale agreement is not rendered void or invalid by the City's failure to obtain recommendations from the Conservation Commission before entering into the conditional purchase and sale agreement.

### 5. Dedication to a Public Purpose

[¶ 26] Mason and Johnson argue that, because the school property was dedicated to a public use, it cannot be transferred to a private party, and therefore the purchase and sale agreement is void. Mason and Johnson did not raise this issue in their complaint or other filings with the Superior Court. Nor did they argue the issue orally in the Superior Court. The issue is therefore unpreserved and we do not address it on appeal. *See Bickford*, 2004 ME 111, ¶¶ 7–8, 855 A.2d at 1154.

### 6. Activities of the Ad Hoc Committee

[¶ 27] Title 1 M.R.S. § 402 (2006) defines the term "public proceeding" to include the functioning of any municipal board, commission, agency, or authority:

2. Public proceedings. The term "public proceedings" as used in this subchapter means the transactions of any functions affecting any or all citizens of the State by any of the following:

. . . .

C. Any board, commission, agency or authority of any county, municipality, school district or any regional or other political or administrative subdivision.

The board, commission, agency, or authority must provide public notice of such public proceedings if the meeting involves three or more persons:

Public notice shall be given for all public proceedings as defined in section 402, if these proceedings are a meeting of a body or agency consisting of 3 or more persons. This notice shall be given in ample time to allow public attendance and shall be disseminated in a manner reasonably calculated to notify the general public in the jurisdiction served by the body or agency concerned. In the event of an emergency meeting, local representatives of the media shall be notified of the meeting, whenever practical, the notification to include time and location, by the same or faster means used to notify the members of the agency conducting the public proceeding.

1 M.R.S. § 406 (2006).

[¶ 28] Mason and Johnson have not indicated how any violation of section 406 by the ad hoc committee would invalidate the purchase and sale agreement. Although the ad hoc committee was charged with reviewing proposals, and had some involvement in the process leading up to review by the City Council and the ultimate execution of the contract, Mason and Johnson have not provided a legal basis for their contention that the ad hoc committee's failure to provide public notice of its meetings somehow renders the purchase and sale agreement invalid. The City Council was the body with the power

---

2. A municipality exercises its constitutional home rule authority when it adopts an ordinance pursuant to procedures that are defined by statute or the municipality's charter. *See* ME. CONST. art. VIII, pt. 2, § 1; 30–A M.R.S. §§ 3001(2), 3002 (2006).

to authorize entry into the purchase and sale agreement. *See* Augusta, Me., City Charter, art. II, § 4 (2006) (authorizing the City Council to administer "all the fiscal, prudential and municipal affairs of the city"). The City Council did, in fact, meet and vote to authorize the city manager to execute the purchase and sale agreement. Mason and Johnson have not asserted any defect in the City Council's notice of its meetings. They have therefore failed to establish their claim that the purchase and sale agreement is invalid on the basis of the public notice statutes.

### 7. Preferential Treatment

 [¶ 29] Although Mason and Johnson contend that Boulos and the LLC received preferential treatment in the proposal process, the only fact that might support their argument is that the developer's name was mentioned frequently by the city manager and City Council throughout the process. This fact alone cannot establish bias in favor of Boulos or the LLC that would somehow invalidate the purchase and sale agreement. Further, Joseph F. Boulos and Partners was the only entity to submit a redevelopment proposal. That the City Council elected to pursue the only proposed plan for redevelopment does not establish bias in favor of that developer.

### 8. Contracting with the LLC

 [¶ 30] The order of the City Council that granted the city manager authority to execute the purchase and sale agreement authorized him "to execute a purchase and sale agreement between the City of Augusta and Joseph Boulos and Partners." The Boulos proposal was made on behalf of "Joseph F. Boulos and Partners and/or designee" and stated, "A single-purpose entity will be established for the purposes of this development, the prin-

cipals of which will include Joseph F. Boulos, Gregory W. Boulos, Daniel M. Greenstein, and C. Anthony McDonald." The City Council was aware that a single-purpose entity—now, the LLC—would be organized pursuant to the proposal's terms. Because that entity had not been named beforehand, the City Council ordered the city manager to contract with the party that had submitted the proposal: "Joseph F. Boulos and Partners." The subsequent execution of the contract by the LLC, rather than Boulos and Partners, does not invalidate or void the contract, which complies with the intent of the City's Order. The City Council made explicit its approval of the city manager's conduct when it ratified his execution of the purchase and sale agreement with the LLC by authorizing amendments to the agreement with the LLC after the LLC had filed its articles of incorporation. *Cf. Sch. Admin. Dist. No. 3 v. Maine Sch. Dist. Comm'n,* 158 Me. 420, 427, 185 A.2d 744, 748 (1962) ("The law is well settled that a committee, which has been given authority to make a certain contract on behalf of a municipal corporation, may ratify such a contract when made by a minority of its members.").

[¶ 31] In sum, the stipulated facts do not demonstrate any procedural errors by the City that render the conditional purchase and sale agreement void or unenforceable. In these circumstances, the City is entitled to a judgment in its favor on Mason and Johnson's complaint for declaratory and injunctive relief.

The entry is:

To the extent that the judgment dismissed the complaint for lack of subject matter jurisdiction, the dismissal is vacated and the matter is remanded for entry of a judgment for the defendants on the merits of the complaint. Denial of Mason and

Johnson's motion for a preliminary injunction affirmed.